Suzanne RAIOLA, Plaintiff,

v.

UNION BANK OF SWITZERLAND, LLC (formerly UBS Securities, LLC and Swiss Bank), Defendant.

No. 98 CIV. 5031(SAS).

United States District Court, S.D. New York.

April 30, 1999.

500

Pamela D. Hayes, New York City, for Plaintiff.

Robin D. Fessel, Alan Rabinowitz, Sullivan & Cromwell, New York City, for Defendant.

## *OPINION AND ORDER*

SCHEINDLIN, District Judge.

Plaintiff Suzanne Raiola ("Raiola") alleges discrimination on the basis of her sex under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et seq. Defendant Warburg Dillon Read LLC ("Warburg") moves to compel arbitration of Raiola's claims pursuant to Sections 2–4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2–4, and to dismiss or stay this action if the case is submitted to arbitration. For the reasons stated below, Defendant's motion to compel arbitration is granted and this action shall be dismissed without prejudice to reinstatement in the event further proceedings are required following the arbitration.

## I. Background

In February, 1996, UBS Securities LLC ("UBS") hired Raiola as an Assistant Trader at the firm's Over–the–Counter Equities Desk, where she worked for a little over two years. *See* Plaintiff's Complaint ("Pl's Cmplt.") at ¶¶ 4, 11; Defendant's Answer ("Def's Ans.") at ¶¶ (B)4, (B)11. During this period, Raiola worked with approximately 12 others, at times the only female, among whom she was neither the most junior nor the most senior. *See* Pl's Cmplt. at ¶ 12; Def's Ans. at ¶¶ (A)4, (A)11, (B)12.

In June, 1998, UBS, along with the other subsidiaries of its parent, Union Bank of Switzerland, merged with the Swiss Bank Corp. and its subsidiaries.[1] *See* Pl's Cmplt. at ¶ 5; Def's Ans. at ¶ (A)5. During the resulting consolidation of the two firms, Raiola alleges that employment interviews were extended to each member of Raiola's department, with the exception of Raiola and one other employee. *See* Pl's Cmplt. at ¶¶ 13, 14; Def's Ans. at ¶¶ (A)8, (A)9, (B)15. Although this other employee, a male, was not interviewed, he was subsequently offered a position. *See* Pl's Cmplt.

at ¶ 16. Consequently, Raiola alleges that all the male employees in Raiola's department were either interviewed or offered employment positions. *See* Pl's Cmplt. at ¶¶ 13–16. Warburg denies that all the males and only males were interviewed for post-merger positions. *See* Def's Ans. at ¶¶ (A)7, (A)8, (B)15. Raiola, however, was terminated even though she was senior to many of the individuals who received offers and had previously received outstanding evaluations and bonuses. *See* Pl's Cmplt. at ¶¶ 11, 16; Def's Ans. at ¶ (A)6.

After filing a complaint with the EEOC, Raiola commenced an action under Title VII of the Civil Rights Act alleging sex discrimination. Raiola is now suing Warburg pursuant to Title VII of the Civil Rights Act.

When UBS hired Raiola in 1996, as a condition of her employment Raiola executed a form commonly known as a Uniform Application for Securities Industry Registration or Transfer (a "U–4 Form"). *See* Pl's Cmplt. at ¶¶ 32, 33; Def's Ans. at ¶¶ (B)32, (B)33. Paragraph Five of the U–4 Form states:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitution, or by-laws of the organizations indicated in Item 10 as may be amended from time to time and that any arbitration award rendered against me be entered as a judgment in any court of competent jurisdiction.

This provision lies directly below a capitalized admonition to the applicant that reads: "THE APPLICANT MUST READ THE FOLLOWING VERY CAREFULLY." Raiola's signature dated February 12, 1996 appears directly below this section of the form on the same page. *See* Declaration of Alan Rabinowitz, Defendant's Attorney, at Ex. A, U–4 Form executed by

---

1. As a result of this merger, UBS became Warburg Dillon Read LLC. The Complaint incorrectly identifies Union Bank of Switzerland, LLC as the successor to UBS.

Raiola. The organizations listed in Item 10 and referenced in the paragraph concerning arbitration include the New York Stock Exchange ("NYSE") and the National Association of Securities Dealers ("NASD").

Raiola urges this Court to interpret the intent of the 1991 Civil Rights Act ("1991 CRA") as excluding civil rights claims under such pre-dispute arbitration agreements. Warburg argues that Raiola's claims unquestionably fall within her agreement to arbitrate.

## II. Standards of Review

■ To determine whether to compel arbitration, a court must decide (1) whether the parties agreed to arbitrate; (2) the scope of the agreement; and (3) whether Congress intended Title VII claims to be arbitrated. *Bird v. Shearson Lehman/American Express, Inc.*, 926 F.2d 116, 118 (2d Cir.1991) (*citing Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir.1987)); *DeGaetano v. Smith Barney, Inc.*, 95 Civ. 1613, 1996 WL 44226, at *3 (S.D.N.Y. Feb.5, 1996).[2]

■ The Federal Arbitration Act "reflects a legislative recognition of the 'desirability of arbitration as an alternative to the complications of litigation.'" *Genesco*, 815 F.2d at 844 (*quoting Wilko v. Swan*, 346 U.S. 427, 431, 74 S.Ct. 182, 98 L.Ed. 168 (1953)). Section 2 of the FAA provides that "an agreement in writing to submit to arbitration an existing controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This section is a "'congressional declaration of a liberal federal policy favoring arbitration agreements.'" *Bird*, 926 F.2d at 119 (citation omitted). If the Court finds an arbitration agreement to be covered by the FAA, it must refer the matter to arbitration. *DeGaetano*, 1996 WL 44226, at *3.

■ In determining whether the parties agreed to arbitrate, the Court must apply the "'federal substantive law of arbitrability,'" *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (citation omitted), "which comprises generally accepted principles of contract law." *Genesco*, 815 F.2d at 845. "Under general contract principles a party is bound by the provisions of a contract that [s]he signs, unless [s]he can show special circumstances that would relieve [her] of such obligation." *Id.* This Court must focus "not on whether there was subjective agreement as to each clause in the contract, but on whether there was an objective agreement with respect to the entire contract." *Id.*

■ With respect to the scope of the arbitration agreement, arbitration clauses must be construed "as broadly as possible" and arbitration should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *McMahan Securities Co. v. Forum Capital Markets L.P.*, 35 F.3d 82, 88 (2d Cir.1994) (internal quotations and citation omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

■ The burden of showing that Congress intended to preclude the arbitration of a claim founded on statutory rights rests on the party opposing arbitration. *Bird*, 926 F.2d at 119. In assessing Congress' intent, the Court must look to the statute's text or legislative history, or infer an intent to preclude arbitration "'from an

---

**2.** *Genesco* also identifies a fourth issue for the Court to consider—whether to stay the balance of the case pending arbitration, if some, but not all, of the claims in the case were arbitrable. Because I find that all of plaintiff's claims are arbitrable, however, I need not reach this fourth issue.

inherent conflict between arbitration and the statute's underlying purposes.'" *Id.* at 119 (quoting *Shearson/American Express, Inc. v. McMahan,* 482 U.S. 220, 227, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)). Throughout this inquiry, the Court must keep in mind that "'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (*quoting Moses H. Cone Memorial Hospital,* 460 U.S. at 24, 103 S.Ct. 927).

## III. Discussion

### 1. Plaintiff's Agreement to Arbitrate

 By signing the U–4 Form, Raiola agreed to arbitrate any disputes arising between herself and Warburg. Under New York law, a signatory to an agreement is "bound by the terms of the [a]greement, including the arbitration provision," unless she can demonstrate "special, mitigating circumstances, such as duress or coercion." *DeGaetano,* 1996 WL 44226, at \*5; *see also, Gilmer,* 500 U.S. at 33, 111 S.Ct. 1647. To establish duress or coercion a plaintiff must show: (1) a threat, (2) which was unlawfully made, and (3) caused involuntary acceptance of contract terms, (4) because the circumstances permitted no other alternative. *DeGaetano,* 1996 WL 44226, at \*5 (*quoting Kamerman v. Steinberg,* 891 F.2d 424, 431 (2d. Cir.1989)).

 Raiola claims that the arbitration agreement is the result of unequal bargaining power, and thus unenforceable. The Supreme Court has considered and rejected this argument. *See Gilmer,* 500 U.S. at 33, 111 S.Ct. 1647 ("Mere inequality in bargaining power ... is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context"). Unequal bargaining power, standing alone, will not render the U–4 Form unenforceable. *See also, Hart v. Canadian Imperial Bank of Commerce,* 43 F.Supp.2d 395, 400–01 (S.D.N.Y. 1999); *Desiderio v. NASD,* 2 F.Supp.2d 516, 520 (S.D.N.Y.1998).

Nor does Raiola allege that she signed the U–4 Form under any threat, much less an unlawful one. Thus, Raiola fails to demonstrate any special, mitigating circumstances and it must be presumed that she assented to the provisions in the U–4 Form. This presumption is further supported by the fact that the arbitration clause was directly preceded by the heading "THE APPLICANT MUST READ THE FOLLOWING VERY CAREFULLY." Finally, as Plaintiff's counsel represented in telephone conferences on April 6–9, 1999, at the time Raiola signed the U–4 Form, she had taken and successfully passed the Series 7 test. As part of that test, taken in November 1993, Raiola was required to become familiar with the rules of the NASD, including the rules requiring the arbitration of disputes between employees and their employer. *See Feinberg v. Bear, Stearns & Co., Inc.,* 90 Civ. 5250, 1991 WL 79309, at \*3 (S.D.N.Y. May 3, 1991). Thus, Plaintiff's claim that she was ignorant of the requirement that she arbitrate any employment disputes is unpersuasive and does not vitiate her agreement with Warburg. *Id.*

Accordingly, I find that Raiola knowingly waived her right to bring a Title VII claim in court. Given the facts developed in this case, Plaintiff's signature on the U–4 Form constitutes her agreement to arbitrate employment claims. A similar conclusion has been reached by many courts in this Circuit. *See Halligan v. Piper Jaffray, Inc.,* 148 F.3d 197, 200 n. 2 (2d Cir.1998); *Thomas James Associates, Inc. v. Jameson,* 102 F.3d 60, 65 (2d Cir.1996); *Hart,* 43 F.Supp.2d 395, 404–05; *Martens v. Smith Barney, Inc.,* 181 F.R.D. 243, 251 (S.D.N.Y.1998); *Desiderio,* 2 F.Supp.2d at 520 (citing cases); *Schuetz v. CS First Boston Corp.,* 96 Civ. 5557, 1997 WL 452392, \*2 (S.D.N.Y. Aug.8, 1997).

### 2. The Scope of the Agreement

█ By signing the U–4 Form, Raiola agreed to arbitrate "any dispute, claim or controversy that may arise between [her] and [Warburg] . . . that is required to be arbitrated under the rules, constitution, or by-laws of the [NYSE or NASD]." It is undisputed that the NYSE Rules in effect at the time of Raiola's agreement provide, in pertinent part, that

> [a]ny dispute, claim or controversy between a customer or non-member and a member, allied member, member organization and/or associated person arising in connection with the business of such member, allied member, member organization and/or associated person in connection with his activities as an associated person shall be arbitrated under the Constitution and Rules of the New York Stock Exchange, Inc. as provided by any duly executed and enforceable written agreement or upon the demand of the customer or non-member.

New York Stock Exchange Guide, ¶ 2600, Rule 600(a) (1995). As discussed already, the U–4 Form signed by Raiola constitutes a "duly executed and enforceable written agreement."

> In addition, NYSE Rule 347 provides:
>
> Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in these rules.

*Id.* at Rule 347. Raiola is therefore required to arbitrate all of her employment claims.

Similarly, the NASD Code of Arbitration Procedure requires the arbitration of

> any dispute, claim or controversy arising out of or in connection with the business of any member of the [NASD], or arising out of the employment or termination of employment of associated person(s) with any member, with the exception of disputes involving the insurance business of any member which is also an insurance company: (a) between or among members; (b) between or among members and associated persons; (c) between or among members or associated persons and public customers, or others; and (3) between or among members [and registered clearing agencies].

National Association of Securities Dealers, Inc. Manual, § 10101 (April 1998). *See also, id.* at § 10201 (making arbitration of the disputes described in § 10101 mandatory in these circumstances).

In short, under the rules of either organization, Raiola's assent to the terms of the U–4 Form bound her to arbitrate any disputes arising with Warburg. Resolving "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration," *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24–25, 103 S.Ct. 927, I find that Raiola's claims fall within the scope of her agreement in the U–4 Form to arbitrate her disputes with Warburg. *See Thomas James*, 102 F.3d at 65–66 (finding employment claims to be within scope of U–4 Form agreement signed by plaintiff); *Desiderio*, 2 F.Supp.2d at 520 (Title VII and other employment claims); *Schuetz*, 1997 WL 452392, at \*3 (same) (citing cases).

### 3. Arbitrability of Title VII Claims

Subsequent to signing her U–4 Form and filing her lawsuit, both the NYSE[3] and the NASD[4] modified their rules to

---

**3.** On December 29, 1998, the SEC amended NYSE Rules 347 and 600 to "exclude claims of employment discrimination, including sexual harassment, in violation of a statute from arbitration unless the parties have agreed to arbitrate the claim after it has arisen." *See*

SEC Release No. 34–40858, 64 Fed.Reg. 1051, 1999 WL 3315.

**4.** On June 22, 1998, the SEC approved an amendment to NASD Rule 10101 providing that effective January 1, 1999, "claims alleg-

preclude mandatory arbitration of discrimination claims.[5] Lingering disputes within the spirited public policy debate about requiring discrimination claims to be heard in arbitral fora instead of the courts, and whether this advances or hinders vindication of basic civil rights, are properly left to the legislative rather than the judicial branch.[6] As *Gilmer* makes clear, the only question before this Court is whether Congress, when it enacted the 1991 CRA, intended to *preclude* pre-dispute agreements in Title VII claims.

In *Gilmer*, the Supreme Court held that the FAA required the enforcement of the pre-dispute mandatory arbitration clause in a U–4 Form identical to the one signed by Raiola. *Gilmer* involved a claim of age discrimination brought under the ADEA. The Supreme Court, noting numerous other contexts in which it had held that statutory claims could be the subject of arbitration agreements, ruled that pre-dispute arbitration clauses should be enforced unless the plaintiff could show Congressional intent to preclude arbitration. *See Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647. To determine that intent, courts were directed to look to a statute's text and legislative history and to ascertain whether there was a conflict between arbitration and the statute's goals. *See id.*

■ Plaintiff's attempts to demonstrate that Congress intended to preclude compulsory arbitration of Title VII claims run counter to the overwhelming weight of authority in this circuit finding arbitration of Title VII claims to be appropriate. *See, e.g., Hart,* 43 F.Supp.2d at 403–05; *Desiderio,* 2 F.Supp.2d at 520; *Bishop v. Smith Barney, Inc.,* 1998 WL 50210, *7–8 (S.D.N.Y. Feb.6, 1998); *Schuetz,* 1997 WL 452392, at *4 (citing cases); *DeGaetano,* 1996 WL 44226, at *5–7; *Smith v. Lehman Bros., Inc.,* 95 Civ. 10326, 1996 WL 383232, *2 (S.D.N.Y. July 8, 1996); *Hall v. Metlife Resources,* 1995 WL 258061, *3 (S.D.N.Y. May 3, 1995); *Maye v. Smith Barney, Inc.,* 897 F.Supp. 100, 109 (S.D.N.Y.1995) (citing cases). Similarly, the New York Court of Appeals has held that claims arising under the State's Human Rights Law can be arbitrated. *See Fletcher v. Kidder, Peabody & Co.,* 81 N.Y.2d 623, 601 N.Y.S.2d 686, 693–94, 619 N.E.2d 998, (1993).

Raiola relies heavily on the *Martens* case, as well as several cases from other circuits, to argue that Congress intended to preclude pre-dispute waiver of judicial remedies for violations of Title VII. *See, e.g., Duffield v. Robertson Stephens & Co.,* 144 F.3d 1182 (9th Cir.1998); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 995 F.Supp. 190 (D.Mass.1998). These cases do not overcome the weight of authority in this and other circuits.

First, the *Martens* Court did not hold that Title VII claims are not subject to pre-dispute arbitration agreements, as suggested by Raiola. Instead, that Court found, in the inapposite context of determining whether it possessed subject matter jurisdiction to evaluate a settlement, that the plaintiffs would not be collaterally

---

ing employment discrimination, including sexual harassment, in violation of a statute are not required to be arbitrated by NASD rules." *See* SEC Release No. 34–40109, 63 Fed.Reg. 35299, 35301, 1998 WL 339422.

**5.** The NASD Regulation expressly states that this rule change applies only "to claims filed on or after the effective date of the rule change [January 1, 1999]." 63 Fed.Reg. at 35301. *See also, Hall v. MetLife Resources,* 94 Civ. 0358, 1995 WL 258061, at *4 (S.D.N.Y. May 3, 1995) ("it is the NASD Code in existence at the time an action is commenced that governs."). Although the NYSE rule change

is silent on the issue of retroactivity, other courts have noted that the NYSE modification "is substantially similar to the NASD's recent rule change, since both leave parties' substantive rights and remedies largely unchanged," *see Hart,* 43 F.Supp.2d at 402–403, *quoting* SEC Release No. 34–40858, 64 Fed.Reg. at 1053, and have applied a December 29, 1998 effective date. *See id.*

**6.** *See Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 170 F.3d 1, 7–8 n. 4 (1st Cir.1999) (citing sources regarding this policy debate).

estopped from arguing that these claims were not subject to such agreements. *Martens*, 181 F.R.D. at 258. Such a tentative and unrelated holding cannot rebut a steady stream of holdings in this Circuit squarely supporting arbitration.

As to *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1 (1st Cir.1999) the First Circuit affirmed the district court's stay of arbitration on general contract principles, expressly rejecting the lower court's findings concerning the arbitrability of Title VII claims. *See Rosenberg*, 170 F.3d· 1, 6–11 ("We find no conflict between the language or purposes of Title VII, as amended, and arbitration"). Further, Plaintiff here has not launched an attack based on the alleged structural or systemic bias of the arbitral organizations, upon which the *Rosenberg* district court relied. *See Rosenberg*, 170 F.3d 1, 13–17. In the absence of any evidence in this record to support a finding of arbitral bias, the holding of the *Rosenberg* trial court has no application here. *See also, Hart*, 43 F.Supp.2d at 405–06.

Similarly, the decision of the Ninth Circuit Court of Appeals in *Duffield* is not binding here. In any event, its reasoning has been rejected by many other courts. *See, e.g., Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 170 F.3d 1, 6–11 (1st Cir.1999); *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 182 (3rd Cir. 1998); *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir.1998); *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997); *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 837 (8th Cir.1997); *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1467–68 (D.C.Cir.1997); *Austin v. Owens–Brockway Glass Container, Inc.*, 78 F.3d 875, 882 (4th Cir.1996); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1487 (10th Cir.1994); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 307–12 (6th Cir.1991); *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229, 230 (5th Cir.1991). These cases apply the Supreme Court's holding in *Gilmer* to Title VII as amended by the 1991 CRA, and hold that there was no Congressional intent to preclude pre-dispute arbitration agreements in the 1991 CRA. In sum, *Raiola* provides little basis to counter the weight of authority that a pre-dispute agreement to arbitrate, embodied in a U–4 Form and voluntarily entered into by the Plaintiff, compels arbitration of Title VII and other employment claims.

## IV. Conclusion

For the foregoing reasons, Plaintiff's claims must be arbitrated pursuant to the U–4 Form which she signed prior to her employment with Warburg. The Defendant's motion to compel arbitration is granted, and the parties are directed to proceed to arbitration. All of Plaintiff's claims asserted in this case are to be arbitrated. The complaint is dismissed without prejudice to its reinstatement in the event further proceedings are required following the arbitration. The Clerk of the Court is directed to close the case.

SO ORDERED: