Suzanne **RAIOLA**, Claimant,

v.

**UNION BANK OF SWITZERLAND, LLC**, Respondent.

No. 98 CIV. 5031(SAS).

United States District Court, S.D. New York.

July 9, 2002.

Pamela D. Hayes, Esq., New York City, for Claimant.

Robin D. Fessel, Esq., Amy I. Berman, Esq., Sullivan & Cromwell, NY, for Respondent.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

On February 15, 2002, an arbitration panel of the National Association of Securities Dealers ("NASD") issued an arbitral award (the "Award") denying all claims brought by claimant Suzanne Raiola ("Raiola") against respondent Union Bank of Switzerland, LLC ("UBS"). UBS now moves to confirm the Award and Raiola moves to vacate the Award. For the reasons stated below, UBS's motion is granted and Raiola's motion is denied.

## I. BACKGROUND

Raiola was hired in February 1996 as an Assistant Trader at UBS's Over–the–Counter Equities Desk (the "NASDAQ desk"). *See Raiola v. Union Bank of Switzerland, LLC,* 47 F.Supp.2d 499, 501 (S.D.N.Y.1999) ("*Raiola I*"). In 1998,

UBS merged with SBC Warburg Dillon Read ("SBC Warburg") to form UBS Warburg (the "merged entity"). *See id.;* UBS Warburg LLC's *Memorandum of Law in Support of Its Motion to Confirm the Arbitration Award and In Opposition to Claimant's Motion to Vacate* ("Resp.Mem.") at 5. Raiola was not offered a position in the merged entity and was ultimately terminated in April 1998. *See Raiola I,* 47 F.Supp.2d at 501; Resp. Mem. at 5; Statement of Claim of Suzanne Raiola, Ex. C to Declaration of Pamela D. Hayes, Esq., Raiola's attorney, in Opposition to Respondent's Motion to Confirm Arbitration Award and in Reply to Respondent's Opposition to Claimant's Motion to Vacate ("Hayes Dec.").

On July 14, 1998, Raiola filed a complaint in this Court alleging discrimination on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et seq. *See Raiola I,* 47 F.Supp.2d at 501. She claimed that all of the male employees in her department were either interviewed for a position or offered a position with the merged entity, and that she was terminated despite the fact that she was senior to many of these men and had previously received outstanding evaluations and bonuses. *See id.* UBS moved to compel arbitration pursuant to Sections 2–4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2–4, and to dismiss the complaint or stay the action pending arbitration. *See id.* On May 5, 1999, this Court granted UBS's motion, holding that Raiola's signature on the form commonly known as a Uniform Application for Securities Industry Registration or Transfer (the "U–4 Form") "constitute[d] an agreement to arbitrate employment claims" and that "Rai-

ola's claims f[e]ll within the scope of her agreement." *Id.* at 503–506; *see also* 4/30/99 Judgment, Ex. E to Hayes Dec.

On April 28, 2000, Raiola filed a Statement of Claim with the NASD alleging that she was discriminated against on the basis of her sex.[1] *See* Award, NASD Dispute Resolution Inc. ("Award"), Ex. 2 to Declaration of Robin D. Fessel, attorney for UBS, in Support of UBS Warburg LLC's Motion to Confirm the Arbitration Award and in Opposition to Claimant's Motion to Vacate ("Fessel Dec."), at 1; NASD Arbitration Statement of Claim Information Sheet, Ex. 1 to Fessel Dec. The NASD arbitration panel (the "Panel") conducted two pre-hearing conferences on May 17, 2001, and October 18, 2001, during which it heard opening and closing statements, heard witness testimony, and made evidentiary rulings. *See* Award at 3; Resp. Mem. at 3; *see also, e.g.,* Transcript of Arbitration Proceedings ("Tr."), Ex. 3 to Fessel Dec., at 199 (evidentiary ruling). The Panel heard from three witnesses called by Raiola and three witnesses called by UBS. *See* Resp. Mem. at 3. On February 7, 2000, the Panel issued an Award denying Raiola's claims "in their entirety" and denying UBS's request for costs and attorneys' fees. Award at 2. Half of the forum fees were assessed against Raiola and half against UBS. *See id.* at 3.

## II. LEGAL STANDARD

"Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,* 103 F.3d 9, 12 (2d Cir.1997) (quotation marks omitted); *see*

---

1. In her motion papers, Raiola asserts for the first time that she was not retained by the merged entity because she was "dating the brother of Michael and Gregory Antolini."

Hayes Dec. at 3. This new assertion was never made to the arbitrators and will not be considered in this motion.

also *Insurance Co. of North Am. v. Ssangyong Engineering & Const. Co., Ltd.*, No. 02 Civ. 1484, 2002 WL 377538, at *4 (S.D.N.Y. Mar. 11, 2002). The FAA lists specific instances where an award may be vacated.[2] *See* 9 U.S.C. § 10(a). In addition, the Second Circuit has recognized that a court may vacate an arbitration award that was rendered in "manifest disregard of the law." *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 28 (2d Cir. 2000). However, "review for manifest error is severely limited." *Id.* To find manifest disregard, a court must find that: "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Id.*

"In very limited situations, a court may vacate an award because arbitrators have manifestly disregarded the evidence." *McDaniel v. Bear Stearns & Co., Inc.*, 196 F.Supp.2d 343, 351 (S.D.N.Y.2002). However, "judicial review of an arbitrator's factual determinations is quite limited." *Beth Israel Med. Ctr. v. Local 814*, No. 99 Civ. 9828, 2000 WL 1364367, at *6 (S.D.N.Y. Sept. 20, 2000). "A court may only vacate an arbitrator's award for manifest disregard of the evidence if 'there is strong evidence contrary to the findings of the arbitrator and the arbitrator has not provided an explanation of his decision.'" *McDaniel*, 196 F.Supp.2d at 351 (quoting *Beth Israel Med. Ctr.*, 2000 WL 1364367, at *6). "A court may not review the weight the arbitration panel accorded conflicting evidence." *Id.; see also Sobol v.*

*Kidder, Peabody & Co., Inc.*, 49 F.Supp.2d 208, 216 (S.D.N.Y.1999), *aff'd*, 164 F.3d 617, 1998 WL 695041 (2d Cir.1998). "Nor may a court question the credibility findings of the arbitrator." *McDaniel*, 196 F.Supp.2d at 351 (citing *Beth Israel Med. Ctr.*, 2000 WL 1364367, at *6; *Greenberg*, 1999 WL 642859, at *1).

The party seeking vacatur of an arbitration award bears the burden of proving manifest disregard. *See Greenberg*, 220 F.3d at 28. But, even if that party proves that the arbitrators' decision is based on a manifest error of fact or law, a court must nevertheless confirm the award if grounds for the decision can be inferred from the facts of the case. *See Willemijn Houdstermaatschappij*, 103 F.3d at 13; *Greenberg*, 1999 WL 642859, at *2.

## III. DISCUSSION

Raiola argues that the Award was in "manifest disregard of the law" because the Panel's decision was "irrational" and "without evidentiary support," was "in part based on perjured testimony," and was "void against public policy." Affirmation of Pamela D. Hayes in Support of Motion to Vacate Arbitrators' Award and Demand for Trial De Novo, ("Hayes Aff.") ¶ 7; Hayes Dec. at 2. None of her arguments justifies vacatur.

### A. Ample Evidence Supported the Panel's Conclusion

Raiola claims that UBS violated Title VII, which makes it unlawful for an employer:

---

2. The statutory grounds for vacatur listed in the FAA are: (1) the award was procured by corruption, fraud or undue means; (2) the arbitrators exceeded their powers or "so imperfectly executed [their powers] that a mutual, final, and definite award upon the ... matter submitted was not made;" (3) the arbitrator was guilty of "misconduct in ... refusing to hear evidence pertinent and material to the controversy;" (4) the arbitrators exhibited "evident partiality" or "corruption;" or (5) the arbitrators were guilty of "misconduct in refusing to postpone the hearing, upon sufficient cause shown," or guilty of "any other misbehavior" that prejudiced the rights of any party. 9 U.S.C. § 10(a). Raiola does not argue that any of these provisions apply.

to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . .

42 U.S.C. § 2000e–2. Because she provides no direct evidence of discrimination (*i.e.*, only indirect or circumstantial evidence), Raiola must establish a prima facie case of sex discrimination by showing that: (1) she is within a protected group; (2) she is qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination based on her sex.[3] *See Bazile v. New York City Hous. Auth.*, No. 00 Civ. 7215, 2002 WL 171690, at *9 (S.D.N.Y. Feb. 1, 2002) (citing *Windham v. Time Warner, Inc.*, 275 F.3d 179, 187 (2d Cir.2001); *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir.2001)). If she establishes a prima facie case, "a presumption of discrimination is created and the burden of production shifts to [UBS] to articulate some legitimate, nondiscriminatory reason for the adverse employment action." *Farias*, 259 F.3d at 98. If UBS meets this burden of production, "the presumption drops out of the analysis," and Raiola must prove that she was actually the victim of intentional sex discrimination. *Id.*

■ The crux of Raiola's argument is that she was the only woman on the UBS NASDAQ desk and males with less experience than she were given the position of assistant trader with the merged entity. *See* Hayes Dec. at 4. However, Jack Francis, who was selected to head the NAS-DAQ desk at the merged entity, testified that the quality of an assistant trader is measured not only by experience, but also by qualities such as intensity, a desire to excel and attention to detail. *See* Tr. at 330. And the testimony of UBS's witnesses indicates that Raiola was not a strong performer measured by these criteria.

Daniel Coleman, who managed the consolidation of the UBS and WDR equities trading desks, testified that, in order to make personnel decisions, he met with then-head of the UBS NASDAQ desk, Michael Antolini, and they discussed UBS personnel, including assistant traders. *See id.* at 186–87. According to Coleman's testimony and contemporaneous notes, Antolini stated that Raiola was "OK, not great," told Coleman she spent a significant amount of time on personal telephone calls, and recommended against retaining Raiola. *Id.* at 88–89, 99. Coleman also conferred with Jack Francis, who worked on the same fifteen-person trading desk as Raiola for over a year. Coleman testified, and Francis confirmed, that Francis recommended against retaining Raiola. *See id.* at 200–02, 327–32.

The Panel also heard testimony from Ben Poole, a trader to whom Raiola was assigned for approximately one year. Poole testified that Raiola was an "inferior" assistant trader, was not seriously engaged in her work, was not focused, was not diligent and spent a substantial amount of time on personal telephone calls. *Id.* at 475.

■ Based on the testimony of Coleman and Poole, the Panel could reasonably have concluded that Raiola was not a satisfactory performer.[4] Accordingly, it could have

---

3. Where plaintiffs offer direct evidence of discrimination, they may proceed under the "mixed motive theory" established in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241–42, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). *Tappe v. Alliance Capital Mgmt.*, 198 F.Supp.2d 368, 372–74 (S.D.N.Y.2001).

4. Raiola insists that the testimony of UBS's witnesses should not have been "given any credibility" because (1) Antolini, her direct supervisor, testified that "she was a very capable Assistant", and (2) Francis and Poole were "interested witnesses with direct stakes

come to the rational conclusion that Raiola was not qualified for the position of assistant trader with the merged entity—an essential element of the prima facie case. Alternatively, the Panel could have determined that Raiola's sub-standard performance was a legitimate nondiscriminatory reason for UBS's decision not to retain her.

### B. The Panel Did Not Disregard the Law with Respect to Evidentiary Matters

■ Raiola argues that the Panel "failed to follow the law" in admitting certain evidence. Hayes Dec. at 2. First, she insists that Coleman's handwritten notes from his meeting with Antolini should not have been admitted because they were hearsay not covered by the business records exception. *See id.* at 10. It is well-established, however, that arbitrators are not required to adhere to the Federal Rules of Evidence, including the rule against hearsay. *See McDaniel,* 196 F.Supp.2d at 350. They "are only required to hear proffered evidence that is pertinent and material, and their determination of what is pertinent and material will only be deemed erroneous if it deprives a party of a fundamentally fair arbitration process." *Id.* (quotation marks omitted).

Coleman's notes were clearly 'pertinent and material' because they reflected Antolini's opinion about Raiola's qualifications and performance. With respect to their reliability, Coleman testified that he met with the heads of various desks to discuss personnel, that he took notes at these meetings, and that he maintained those notes in a personnel file in his office. *See* Tr. at 190–91. He testified that he took

notes during his meeting with Antolini, *see id.* at 188–189, and Antolini confirmed this testimony, *see id.* at 533. Based on this testimony, it cannot be said that the Panel's decision to admit the notes deprived Raiola of a fundamentally fair trial.

■ Raiola also insists that the Panel improperly admitted Poole's testimony which was allegedly perjurious. *See* Hayes Dec. at 11–12. This contention is based on a taped telephone call between Poole and Antolini that apparently contradicts Poole's earlier testimony that he never spoke about this case with Antolini. *See id.* at 12. Raiola raised this issue during the arbitration proceedings, putting the Panel on notice of all the relevant evidence—Poole's testimony, Antolini's testimony, and the tape and transcript of their telephone conversation. If, based on that evidence, the Panel ultimately decided that some or all of Poole's testimony was credible, it is not within this Court's authority to question that determination. *See Greenberg,* 1999 WL 642859, at *1; *McDaniel,* 196 F.Supp.2d at 351; *Beth Israel Med. Ctr.,* 2000 WL 1364367, at *6.

### C. It Was Not Improper for the Panel to Permit UBS's Counsel to Cross–Examine Antolini

Raiola asserts that the Panel improperly permitted UBS's counsel to cross-examine Antolini because counsel's firm, Sullivan & Cromwell, had represented Antolini in a prior matter. *See* Hayes Dec. at 12–13. In this Circuit, "the issue of disqualification is essentially governed by New York law." *JPMorgan Chase Bank ex rel. Mahonia Ltd. and Mahonia Natural Gas v. Liberty Mut. Ins. Co.,* 189 F.Supp.2d 20, 22 (S.D.N.Y.2002) (citing Local Rules of

---

in the outcome of the case." Hayes Dec. at 5, 9. It is well-established, however, that a court may not question the credibility findings of the arbitrators, *see McDaniel,* 196 F.Supp.2d

at 351, or review the weight the arbitrators accorded to conflicting evidence, *see Sobol,* 49 F.Supp.2d at 221.

the United States District Courts for the Southern and Eastern Districts of New York, Local Civil Rules 1.3(a)(6); 1.5(b)(5) (adopting New York law for this purpose)); *see also Song v. Dreamtouch, Inc.*, No. 01 Civ. 0386, 2001 WL 487413, at *4 (S.D.N.Y. May 8, 2001) (citing *NCK Org. Ltd. v. Bregman*, 542 F.2d 128, 130 n. 2 (2d Cir. 1976)); *Rocchigiani v. World Boxing Counsel*, 82 F.Supp.2d 182, 186 (S.D.N.Y. 2000). Under New York Law, a lawyer is generally prohibited from knowingly "reveal[ing] a confidence or secret of a client," "use[ing] a confidence or secret of a client to the disadvantage of the client," or "use[ing] a confidence or secret of a client for the advantage of the lawyer or of a third person, unless the client consents after full disclosure." N.Y.Code of Prof. Resp., DR 4–101, 22 N.Y.C.R.R. § 1200.19(B).

Raiola argues that there was a "clear conflict of interest" in this case because Sullivan & Cromwell "represented Mr. Antolini during an investigation of UBS which resulted in a sanction by the SEC., [sic] against several of its employees including Michael Antolini." Hayes Dec. at 12. She claims that UBS's counsel "never disclosed their representation to counsel for [Raiola]" and complains that UBS "refused to call Mr. Antolini as a witness ... but was allowed to cross examine Mr. Antolini, and use impeachment evidence which [counsel] knew about as a result of the firm's representation of him." *Id.*

UBS points out that the issue of Sullivan & Cromwell's prior representation of Antolini was addressed by the Panel. *See* UBS Warburg LLC's Reply Memorandum of Law in Support of Its Motion to Confirm the Arbitration Award at 4 n. 2. The Panel knew that "Sullivan & Cromwell represented Antolini for only a short period of time in an SEC investigation before recognizing that a conflict existed and locating separate counsel for Antolini" and

that "the attorneys representing UBS [ ] in this arbitration proceeding were not privy to any information concerning the prior SEC proceeding." *Id.* UBS also notes that the only information UBS's counsel used to impeach Antolini was contained in an SEC document that was publicly available. *See id.; see also* Ex. 1 to Declaration of Amy I. Berman, attorney for UBS, in Support of UBS Warburg LLC's Motion to Confirm The Arbitration Award and in Opposition to Claimant's Motion to Vacate ("Berman Dec.").

■ Raiola's argument fails for two reasons. *First,* the Second Circuit has held that only the former client may move for disqualification. *See United States v. Rogers,* 9 F.3d 1025, 1030 (2d Cir.1993) (" '[A]s a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification.' ") (quoting *United States v. Cunningham,* 672 F.2d 1064, 1072 (2d Cir.1982)). Because Raiola is not the former client and is not in "privy" with Antolini, the former client, she may not move for disqualification. *Id.*

■ *Second,* the Panel could reasonably have concluded that Raiola failed to adduce sufficient evidence to meet the "high standard of proof" required for disqualification. *Evans v. Artek Sys. Corp.,* 715 F.2d 788, 791 (2d Cir.1983); *Government of India v. Cook Indus., Inc.,* 569 F.2d 737, 739 (2d Cir.1978); *Bennett Silvershein Assocs. v. Furman,* 776 F.Supp. 800, 802 (S.D.N.Y.1991). The Second Circuit has cautioned that counsel should not be disqualified indiscriminately because disqualification interferes with a party's right to freely choose its counsel and may be urged by an opponent for purely tactical reasons. *See Mitchell v. Metropolitan Life Ins. Co., Inc.,* No. 01 Civ. 2112, 2002 WL 441194, at *3 (S.D.N.Y. Mar. 21, 2002) (citing *Board of Educ. v. Nyquist,* 590 F.2d 1241, 1246

(2d Cir.1979); *Government of India*, 569 F.2d at 739). Under the Second Circuit's "restrained approach," an attorney should only be disqualified "when the facts concerning the lawyer's conduct poses a significant risk of trial taint." *Mitchell*, 2002 WL 441194, at *3 (citing *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir.1981); *Nyquist*, 590 F.2d at 1246). Such a risk may be encountered where the attorney is "potentially in a position to use privileged information" obtained through prior representation, "thus giving [her] present client an unfair advantage." *Armstrong v. McAlpin*, 625 F.2d 433, 444 (2d Cir.1980).

Raiola has offered no evidence that counsel for UBS had access to privileged information relating to the prior representation of Antolini, or that the information used to impeach Antolini was in any way privileged. Accordingly, the Panel could reasonably have concluded that Sullivan & Cromwell's prior representation of Antolini did not place UBS's counsel in "a position to use privileged information" concerning Antolini, *Armstrong*, 625 F.2d at 444, and that her cross-examination of Antolini did not pose "a significant risk of trial taint," *Mitchell*, 2002 WL 441194, at *3.

### D. Assessment of Fees

■ Raiola's final argument is that this Court should vacate that portion of the arbitration award that requires her to pay a portion of the arbitration fees because she was "forced" to proceed before the arbitrators. Hayes Dec. at 13. This argument is without merit because this Court has already held that Raiola *agreed* to arbitrate her claims pursuant to a document that she voluntarily signed. *See Raiola I*, 47 F.Supp.2d at 506.

### IV. CONCLUSION

For the reasons stated above, the Award is confirmed and the motion to vacate is denied. The Clerk is directed to close this case.

SO ORDERED.