Howard **GREENBERG**, Petitioner–
Appellant,

v.

**BEAR, STEARNS & CO.**, Bear, Stearns
**& Co., Inc.,** and Bear, Stearns Securi-
ties Corp., Respondents–Appellees.

Docket No. 99–9041

United States Court of Appeals,
Second Circuit.

Argued: March 31, 2000

Decided: Aug. 7, 2000

Leslie Trager, Morley and Trager, New York, N.Y. for Petitioner–Appellant.

Jack P. Levin (P. Benjamin Duke, on the brief), Covington & Burling, New York, N.Y. for Respondents–Appellees.

Before: OAKES, WALKER, and KEITH,* Circuit Judges.

JOHN M. WALKER, Jr., Circuit Judge:

Petitioner-appellant Howard Greenberg appeals from the August 25, 1999 judgment of the United States District Court for the Southern District of New York (John S. Martin, Jr., *District Judge* ), denying his petition to vacate an arbitration award that dismissed his securities fraud claims against respondents-appellees Bear, Stearns & Co., Inc., and Bear, Stearns Securities Corp. (collectively, "Bear Stearns"). On appeal, Greenberg argues that the district court's judgment should be reversed and the arbitration award against him vacated because the arbitrators manifestly disregarded federal law in rendering the award. Bear Stearns responds that there was no basis for federal subject matter jurisdiction in this case and that, in any event, the arbitral award easily withstands review.

This appeal squarely presents the question of whether and under what circumstances federal courts have jurisdiction to hear motions to vacate arbitration awards. We conclude that the district court had jurisdiction in this case because Greenberg challenged the award primarily on the grounds of manifest disregard of federal law. Nevertheless, Greenberg has not met the very stringent burden of demonstrating the sort of manifest disregard required to vacate the award. Therefore, we affirm the judgment of the district court.

## BACKGROUND

At the time of the events underlying Greenberg's claim, Bear Stearns (a "clearing broker") provided securities clearing services to Greenberg's primary broker, Sterling Foster (an "introducing broker"). According to Greenberg, Bear Stearns violated federal and state securities laws because it knew of and participated in a fraudulent scheme perpetrated by Sterling Foster; sent false and misleading confirmations in connection with this scheme; and failed to send out a required prospectus. We briefly discuss the facts and allegations pertinent to the appeal.

In 1996, Sterling Foster organized the initial public offering ("IPO") for a company called ML Direct. Under an agreement between Bear Stearns and Sterling Foster, the latter requested permission from the former to underwrite this sale. According to Sterling Foster's plan, ML Direct would make a public sale of 1.1 million shares, and Sterling Foster would sell short an additional 2.3 million shares, to be covered by shares it would obtain from existing shareholders. This scheme was fraudulent, alleged the plaintiff, because the prospectus distributed to purchasers of ML Direct stock stated that shares from the selling shareholders were subject to a lock-up agreement for 12 months and that there were "no agreements or understandings ... with respect to release of the securities prior to [this time]." Bear Stearns employees admitted having seen the prospectus, but did not recall reading the sentences about the lock-up. Bear Stearns agreed to clear the transaction.

In September 1996, the IPO and stock sales proceeded as planned. Sterling Foster allegedly reaped an enormous profit at the expense of the selling shareholders by selling shares short and purchasing shares from those shareholders at a significantly lower price. Bear Stearns sent out confirmations to purchasers of ML Direct stock that stated: "Your broker makes a market in this security and acted as principal." The confirmations did not disclose Sterling Foster's short sales or its large profit, nor was a prospectus sent to those who purchased shares.

---

* The Honorable Damon J. Keith of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

In May 1997, the petitioner filed a claim with the National Association of Security Dealers ("NASD") against Bear Stearns alleging, among other things, fraud and market manipulation in connection with Bear Stearns's provision of securities clearing services to Sterling Foster. A panel of three arbitrators heard arguments and testimony through extensive briefing and seven days of hearings. The arbitrators first dismissed Greenberg's claim based on Bear Stearns's purported failure to send him a prospectus and thereafter dismissed his remaining claims. On March 9, 1999, the arbitrators issued a written award confirming their decision to dismiss.

On January 18, 1999, Greenberg moved in federal district court to vacate the award on the basis that it "violated public policy and manifestly disregarded the law." In an opinion and award dated August 23, 1999, the district court denied the motion on the grounds that the petitioner had failed to demonstrate manifest disregard of the law in the arbitrators' treatment of his claims. This appeal followed.

## DISCUSSION

### I. *Federal Jurisdiction*

■ The principal question presented in this appeal is whether the district court had federal question jurisdiction over Greenberg's motion to vacate the arbitration award. Jurisdiction would plainly lie if, among other things, the parties were diverse, *see* 28 U.S.C. § 1332, the claim arose in admiralty, *see* 28 U.S.C. § 1333, or the dispute concerned the interpretation of a collective bargaining agreement, *see* 29 U.S.C. § 185(a). *Cf. Drexel Burnham Lambert, Inc. v. Valenzuela Bock*, 696 F.Supp. 957, 964–65 (S.D.N.Y.1988) (Leval, *J.*) (listing some circumstances under which federal courts plainly have jurisdiction to hear a petition to compel arbitration). However, we must decide whether and under what circumstances a federal court may entertain a motion to vacate an award where, as in this case, alternative bases for jurisdiction are absent. We conclude that: (1) the fact that the arbitration itself concerns issues of federal law does not, on its own, confer subject matter jurisdiction on a federal district court to review the award; but (2) federal jurisdiction may lie where the petitioner seeks to vacate the award primarily on the ground of manifest disregard of federal law.

■ Federal courts have jurisdiction over "all civil actions arising under the ... laws ... of the United States." 28 U.S.C. § 1331. Federal question jurisdiction exists where a well-pleaded complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

■ Federal law plainly does not create the cause of action in this case. Greenberg filed his petition under § 10 of the Federal Arbitration Act ("FAA"), which authorizes "the United States court in and for the district wherein the [arbitration] award was made" to "make an order vacating the award" under certain circumstances. 9 U.S.C. § 10(a). However, it is well-settled that the FAA does not confer subject matter jurisdiction on the federal courts even though it creates federal substantive law. *See Southland Corp. v. Keating*, 465 U.S. 1, 16 n. 9, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Therefore, federal question jurisdiction does not arise simply because a petitioner brings a claim under § 10 of the FAA; there must be "an independent basis of jurisdiction" before district courts may entertain petitions to vacate. *Harry Hoffman Printing, Inc. v. Graphic Communications, Int'l Union, Local 261*, 912 F.2d 608, 611 (2d Cir.1990).

Simply raising federal-law claims in the underlying arbitration is insufficient to supply this "independent basis." In the context of a motion to compel arbitration under § 4 of the FAA, see 9 U.S.C. § 4, we have specifically held that there is no federal subject matter jurisdiction "merely because the underlying claim raises a federal question." *Westmoreland Capital Corp. v. Findlay*, 100 F.3d 263, 268 (2d Cir.1996). Petitions to compel arbitration "must be brought in state court unless some other basis for federal jurisdiction exists, such as diversity of citizenship or assertion of a claim in admiralty." *Id.* Language in § 4 seemingly authorizing the federal courts to hear such petitions "is not intended to confer jurisdiction, but should instead be read as a response to the antiquated common law principle that an agreement to arbitrate would oust the federal courts of jurisdiction." *Id.* at 267–68 (citing *Valenzuela Bock*, 696 F.Supp. at 961–62).

The holding in *Westmoreland* logically extends to motions to vacate an arbitration award under § 10 of FAA. Indeed, we implied as much in *Westmoreland* itself, see 100 F.3d at 268, and other courts have explicitly so held, see, e.g., *Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1247 (D.C.Cir.1999); *Ford v. Hamilton Invests., Inc.*, 29 F.3d 255, 257–58 (6th Cir.1994); *Lipton v. Shearson*, 934 F.Supp. 638, 639 (S.D.N.Y.1996); *Magninelli v. Smith Barney, Inc.*, No. 98 Civ. 8986, 1999 WL 615096, at *1 (S.D.N.Y. Aug.12, 1999). As with a motion under § 4, the only federal rights that a motion under § 10 necessarily implicates are those created by the FAA itself, which rights do not give rise to federal question jurisdiction. In both contexts, there is no necessary link between the requested relief and the character of the underlying dispute. For example, a petition to compel arbitration because the dispute falls within the scope of an arbitration clause, or to vacate an award because the arbitrators exceeded their powers under that clause, will turn on the interpretation of

the clause, regardless of whether the actual dispute implicates any federal laws. Accordingly, the fact that the arbitration concerns issues of federal law does not, standing alone, confer subject matter jurisdiction on a federal district court to review the arbitral award.

Nevertheless, federal jurisdiction may still lie if the ultimate disposition of the matter by the federal court "necessarily depends on resolution of a substantial question of federal law." *Barbara v. New York Stock Exch., Inc.*, 99 F.3d 49, 54 (2d Cir.1996) (internal quotation marks omitted). Thus we must decide whether the petition in this case to vacate an arbitral award presents a substantial question of federal law.

"[I]n determining federal question jurisdiction, courts must make principled, pragmatic distinctions, engaging in a selective process which picks the substantial causes out of the web and lays the other ones aside." *Id.* (internal quotation marks omitted). "[E]xamining only those allegations which are properly raised in a well-pleaded complaint, we look to the nature of the federal question raised in the claim to see if it is sufficiently substantial to warrant federal jurisdiction." *Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 570 (2d Cir.1995) (internal quotation marks omitted). The greater the federal interest at stake, the more likely it is that federal jurisdiction will be found. *See West 14th St. Commercial Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188, 193 (2d Cir.1987) (citing *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 814 n. 12, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)).

In our view, under these standards, whether or not a petition to vacate under § 10 raises a substantial federal question turns on the ground for the petitioner's challenge to the award. The FAA and federal case law supply various bases for review of an arbitral award. Section 10 itself lists several grounds, including fraud

in procuring the award; corruption, partiality, or prejudicial misconduct on the part of the arbitrators; abuse of power; and failure to render "a mutual, final, and definite award." 9 U.S.C. § 10(a). Judicial interpretation has added additional grounds, such that awards may be vacated under limited circumstances where the arbitrators manifestly disregarded the law, *see DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir.1997), or where enforcement would violate a "well defined and dominant public policy," *IBEW Local 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 717 (2d Cir.1998) (internal quotation marks omitted).

We hold that where, as here, the petitioner complains principally and in good faith that the award was rendered in manifest disregard of federal law, a substantial federal question is presented and the federal courts have jurisdiction to entertain the petition. In contrast to grounds of review that concern the arbitration process itself—such as corruption or abuse of power—review for manifest disregard of federal law necessarily requires the reviewing court to do two things: first, determine what the federal law is, and second, determine whether the arbitrator's decision manifestly disregarded that law. This process so immerses the federal court in questions of federal law and their proper application that federal question subject matter jurisdiction is present.

Where the arbitrators' alleged manifest disregard of federal law forms a key part of the petitioner's complaint about the award, the federal questions thereby presented are substantial enough to support federal jurisdiction. First, although review for manifest disregard is "severely limited," *DiRussa*, 121 F.3d at 821, if engaging in such review is essentially all that is required of the reviewing court, it is plain that federal questions will predominate. Second, there is a clear federal interest in resolving these questions. While federal claims may appropriately be resolved through arbitration, the federal

courts have a strong interest in ensuring that arbitrators interpret and apply federal law properly, even if within a wide range of tolerance. *Cf. Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 232, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) ("[A]lthough judicial scrutiny of arbitration awards necessarily is limited, such review is sufficient to ensure that arbitrators comply with the requirements of the statute."). Indeed, as Judge Leval observed, this interest "would seem to be far greater" than the federal interest implicated by a petition to compel arbitration under § 4—that is, the "interest in seeing that the claims be arbitrated" in the first place. *Valenzuela Bock*, 696 F.Supp. at 963.

We note that, by and large, the rulings of other courts are not inconsistent with our holding here. Many courts have found the simple presence of federal claims in the arbitration itself insufficient as an independent basis for federal jurisdiction. These cases, however, generally did not involve a petition to vacate on the grounds of manifest disregard of federal law in the arbitrators' resolution of the underlying federal claims. *But see Manginelli*, 1999 WL 615096, at *2 (holding that the "limited application and interpretation of federal law" required to rule on a petition to vacate an award on the grounds of manifest disregard is insufficient to "provide an independent basis for federal jurisdiction"). Instead, the petitioners challenged arbitration awards on grounds that plainly did not require resolution of a uniquely federal issue, including perjury, *see Kasap*, 166 F.3d at 1245; "alleged misdeeds of the arbitrators," *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1472 (11th Cir.1997); "fraud, corruption, undue means, evident partiality, and failure to consider pertinent and material evidence," *Minor v. Prudential Sec., Inc.*, 94 F.3d 1103, 1105–06 (7th Cir.1996); and manifest disregard of state law, *see Ford*, 29 F.3d at 258; *Lipton*, 934 F.Supp. at 639. The Seventh Circuit acknowledged that the federal courts might have jurisdiction if the motion to vacate

involved, on its face, "the resolution of [the petitioner's] federal claims or some question of federal law." *Minor,* 94 F.3d at 1106. *But see Kasap,* 166 F.3d at 1247 (suggesting that review for fraud under § 10 implicates federal law but that this is insufficient to support federal jurisdiction). Where the petitioner seeks vacatur chiefly on the ground of manifest disregard of federal law, a federal question is plainly presented.

In this case, if it were not for the claim that vacatur is warranted because federal law was manifestly disregarded, we would find no jurisdiction. The simple fact that the underlying arbitration implicated federal questions would not be enough. But because the petition alleges primarily that the award was rendered in manifest disregard of the federal laws underpinning these claims, federal question jurisdiction is present.

Accordingly, the district court had jurisdiction to consider Greenberg's petition, and this appeal is properly before us. We turn now to the merits.

## II. *Review of the Award for Manifest Disregard of the Law*

▇▇▇▇▇ The district court held that the petitioner had failed to demonstrate that the arbitral award was rendered in manifest disregard of the law. Review for manifest disregard is "severely limited." *Dirussa,* 121 F.3d at 821. In order to vacate an award on these grounds, a reviewing court must find "both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Id.* (internal quotation marks and alterations omitted). The party seeking vacatur of the award bears the burden of showing manifest disregard under these standards. *See*

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,* 103 F.3d 9, 12 (2d Cir.1997). A district court's application of the manifest disregard standard is a legal determination that we review *de novo. See id.*

▇▇▇▇▇ The petitioner has failed to meet this very stringent burden with respect to any of his claims against Bear Stearns. First, Greenberg argues that the arbitrators manifestly disregarded federal law in denying his claim that Bear Stearns knew about Sterling Foster's fraudulent scheme and is therefore liable under § 10(b) of the Securities Exchange Act. Knowing participation in a fraudulent scheme may render a participant liable under § 10(b). *See S.E.C. v. United States Envtl., Inc.,* 155 F.3d 107, 111 (2d Cir.1998), *cert. denied sub nom. Romano v. S.E.C.,* 526 U.S. 1111, 119 S.Ct. 1755, 143 L.Ed.2d 787 (1999). In this case, however, Bear Stearns employees testified that they did not know about Sterling Foster's fraud, and thus the arbitrators could reasonably have concluded that Bear Stearns lacked the knowledge required for § 10(b) liability. The petitioner argues that Bear Stearns should be deemed to have knowledge of the fraud because it had the necessary information before it, but it is by no means clear that the doctrine of imputed knowledge applies in this context.

▇▇▇▇▇ Second, according to Greenberg, Bear Stearns violated federal securities law by sending knowingly false confirmations. The confirmations were allegedly misleading because, while they made certain disclosures, they failed to reveal that the transaction was an underwriting, not a market sale, and that Sterling Foster was reaping a 400% profit from the scheme. But the arbitrators could have concluded that the language was not actually false, since Sterling Foster, in fact, was a market maker in ML Direct securities at the time, although not for all transactions. In addition,

there is no well-settled law imposing a duty upon a clearing broker, who is unaware of an introducing broker's undisclosed and excessive profit, to inquire into the matter and then inform the latter's customers of such self-dealing.

 Third, Greenberg contends that Bear Stearns failed to comply with 17 C.F.R. § 230.174, which requires delivery of a prospectus in connection with the sale of newly issued securities. But the regulation imposes this requirement only on underwriters and dealers, *not on clearing brokers*, and nothing in the agreement between Bear Stearns and Sterling Foster unambiguously shifted the burden of complying with this requirement onto Bear Stearns.

 Finally, Greenberg asserts that Bear Stearns should be held liable as an aider and abetter under New York law because it participated in the fraudulent scheme and provided substantial assistance to Sterling Foster. *See S & K Sales Co. v. Nike, Inc.,* 816 F.2d 843, 847–48 (2d Cir.1987). However, there was ample basis for the arbitrators to conclude that Bear Stearns's participation was insufficient to constitute substantial assistance. "[T]he simple providing of normal clearing services to a primary broker who is acting in violation of the law does not make out a case of aiding and abetting against the clearing broker." *Stander v. Financial Clearing & Servs. Corp.,* 730 F.Supp. 1282, 1286 (S.D.N.Y.1990); *cf. Edwards & Hanly v. Wells Fargo Sec. Clearance Corp.,* 602 F.2d 478, 484 (2d Cir.1979) (clearing brokers owe no separate duty to customers of an introducing broker).

In sum, the arbitrators did not ignore or refuse to apply well-defined and clearly applicable law in rejecting any of the appellant's claims in such a way that would amount to manifest disregard.

## CONCLUSION

For the foregoing reasons, we hold that: (1) where, as here, a § 10 petitioner complains principally and in good faith that an arbitration award was rendered in manifest disregard of federal law, the federal courts have jurisdiction to entertain the petition; and (2) the district court in this case properly rejected the petitioner's claim for failure to demonstrate that the arbitrators had manifestly disregarded the law in their treatment of his securities claims. We have considered the petitioner's other arguments and find them to be without merit. Accordingly, we affirm the judgment of the district court.