Rick TRIPI, Petitioner,

v.

**PRUDENTIAL SECURITIES, INC., Respondent.**

No. 02 Civ. 6225(SAS).

United States District Court,
S.D. New York.

Sept. 23, 2003.

Neal Brickman, The Law Offices of Neal Brickman, New York, NY, for Petitioner.

Kenneth M. Molther, Bressler, Amery & Ross, New York, NY, for Respondent.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Petitioner Rick Tripi moves pursuant to 9 U.S.C. §§ 9–10 to vacate an arbitration award ("the Award") issued on May 2, 2002. Respondent Prudential Securities Incorporated ("Prudential"), in turn, cross-moves to confirm the Award. For the reasons stated below, this action is remanded to the arbitrators for clarification of the damages award.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Tripi's Account

Tripi maintained an investment account ("the Account") at Prudential starting in August 1998. *See* 6/20/03 Petition ("Pet.") ¶ 10. The Account was managed by Glenn Malloff, a broker employed by Prudential since January 1998. *See id.* ¶ 11. Malloff

previously was censured and subjected to a twelve week suspension by the New York Stock Exchange ("NYSE"). *See* 3/8/94 Exchange Hearing Panel Decision 94–32, Ex. J to Pet. As a result, Malloff was placed under heightened supervision for his first six months at Prudential. *See* Pet. ¶ 12.

Although Tripi's Account initially realized some gains, it dropped precipitously from its high of approximately $980,000 in January 1999 to less than $110,000 in November 1999. *See id.* ¶ 5. The Account was selected for two compliance reviews in the first eight months. *See id.* ¶ 30. On or about September 17, 1999, the Account was restricted to liquidating orders only. *See id.* ¶ 48; Computerized Record of Tripi's Account, Ex. Q to Pet.

### B. Tripi's Claim and Prudential's Response

On October 25, 2000, Tripi filed a Statement of Claim ("Claim") with the National Association of Securities Dealers Dispute Resolution Office ("NASD–DR"), alleging, among other things, that Prudential: (a) effected transactions without Tripi's knowledge or consent; (b) failed to follow Tripi's instructions; (c) used discretion in option trading without written authorization; (d) effected transactions in contravention of the stated goal of the Account as a retirement fund; (e) effected excessive trades solely to increase the commissions; and (f) failed to properly supervise employees, including Malloff. *See* Claim, Ex. A to Pet., ¶ 35.[2]

Prudential responded to the Claim, alleging that Tripi was a knowing investor who sought aggressive investments and in-

---

1. This Court's jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Tripi is a resident of Massachusetts and Prudential is incorporated in New York.

2. Tripi is suing Prudential for Malloff's malfeasance under an agency theory and for its own failure to supervise.

terposing several affirmative defenses, including that Tripi had ratified the transactions in the Account and failed to mitigate his damages. *See* Prudential's Response to Claim ("Response"), Ex. B to Pet., at 3–4, 8–10.

## C. The Arbitration Hearing and Award

A hearing was held on April 15, 16, and 17, 2002, before Denzil J. Klippel, Arnold Wagner, and John J. Duval, Sr. (collectively, "the Panel"). *See* Pet. ¶ 5. On May 2, 2002, the Panel issued a decision awarding Tripi $25,000 in compensatory damages and requiring Prudential to pay all forum and filing fees. *See* Award, Ex. F to Pet., at 2. On May 12, 2002, Tripi requested that the Panel clarify the Award because no rationale for the Award was given. *See* 5/12/02 Letter from Ethan Leonard, counsel for Tripi, to Bola Aguda, Staff Attorney at NASD–DR ("5/12/02 Ltr."), Ex. G to Pet. By letter dated May 22, 2002, the Panel denied Tripi's request for clarification. *See* 5/22/02 Letter from Klippel to Aguda ("5/22/02 Ltr."), Ex. H to Pet.

## D. The Petition

On August 2, 2002, Tripi filed a petition with this Court seeking to vacate the Award on the grounds that the Panel manifestly disregarded the law and evidence presented at the hearing. Tripi did not provide a transcript of the arbitration proceedings with that application because the NASD had not located the tape recordings.

Prudential cross-moved to confirm the Award.

In March 2003, the Court denied Tripi's motion "without prejudice and with leave to re-file and/or amend the motion within ninety days of when the tapes of the arbitration proceeding are located and forwarded to him." 3/11/03 Order. Prudential's cross-motion to confirm the Award was "deemed withdrawn" with leave to renew and/or amend "if and when Tripi refiles his motion to vacate." *Id.*

Shortly thereafter, the tapes were forwarded to Tripi's counsel. Tripi refiled his petition on June 20, 2003 and Prudential refiled its cross-motion.[3]

## II. STANDARD OF REVIEW

 "It is well-established that courts must grant an arbitration panel's decision great deference." *Duferco Int'l Steel Trading v. T. Klaveness Shipping*, 333 F.3d 383, 388 (2d Cir.2003). "Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (internal quotation marks and citation omitted).

 The Federal Arbitration Act ("FAA") lists four specific instances where an award may be vacated, all of which involve corruption, fraud, or some other impropriety on the part of the arbitrators. *See* 9 U.S.C. § 10(a).[4] In addition to the

---

3. The petition is timely because it relates back to the prior petition.

4. The statutory grounds for vacatur listed in the FAA are: (1) the award was procured by corruption, fraud or undue means; (2) the arbitrators exceeded their powers or "so imperfectly executed [their powers] that a mutual, final, and definite award upon the ...

matter submitted was not made"; (3) the arbitrators were guilty of "misconduct in ... refusing to hear evidence pertinent and material to the controversy"; (4) the arbitrators exhibited "evident partiality" or "corruption"; or (5) the arbitrators were guilty of "misconduct in refusing to postpone the hearing, upon sufficient cause shown," or guilty of

statutory grounds for vacatur, a court may vacate an arbitration award that was rendered in "manifest disregard of law." *Goldman v. Architectural Iron Co.*, 306 F.3d 1214, 1216 (2d Cir.2002). However, review for manifest disregard is "severely limited." *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 28 (2d Cir.2000) (internal quotation marks and citation omitted). The doctrine is reserved for those "exceedingly rare circumstances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply." *Duferco*, 333 F.3d at 389.

■ The Second Circuit has cautioned that "manifest disregard clearly means more than error or misunderstanding with respect to the law." *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 (2d Cir. 1998) (internal quotation marks and citation omitted). To find manifest disregard, a court must find both that: "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Greenberg*, 220 F.3d at 28 (internal quotation marks and citation omitted). Once these two inquiries are satisfied, a court must then look at the knowledge actually possessed by the arbitrators. *See Duferco*, 333 F.3d at 390.

■ "In very limited situations, a court may vacate an award because arbitrators have manifestly disregarded the evidence." *McDaniel v. Bear Stearns & Co., Inc.*, 196 F.Supp.2d 343, 351 (S.D.N.Y. 2002) (citations omitted). However, "judicial review of an arbitrator's factual determinations is quite limited." *Beth Israel Med. Ctr. v. Local 814*, 2000 WL 1364367, at *6 (S.D.N.Y. Sept.20, 2000). "A court may only vacate an arbitrator's award for manifest disregard of the evidence if there is strong evidence contrary to the findings of the arbitrator and the arbitrator has not provided an explanation of his decision."[5] *McDaniel*, 196 F.Supp.2d at 351 (internal quotation and citation omitted). "A court may not review the weight the arbitration panel accorded conflicting evidence." *Id.* (citing *Campbell v. Cantor Fitzgerald & Co.*, 21 F.Supp.2d 341, 349 (S.D.N.Y.1998), *aff'd*, 205 F.3d 1321 (2d Cir.1999)). "Nor may a court question the credibility findings of the arbitrator." *Id.* (citations omitted).

■ The party seeking vacatur of an arbitration award bears the burden of proving manifest disregard. *See Greenberg*, 220 F.3d at 28 (citation omitted). However, even if that party proves that the arbitrators' decision is based on a manifest error of fact or law, a court nevertheless must confirm the award if "any colorable justification for the arbitrator's

---

"any other misbehavior" that prejudiced the rights of any party. 9 U.S.C. § 10(a).

**5.** Arbitrators are not required to give reasons for their determinations. *See Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 112 (2d Cir.1993) (citing *Wilko v. Swan*, 346 U.S. 427, 436, 74 S.Ct. 182, 98 L.Ed. 168 (1953)). Although "arbitrators may render a lump sum award without disclosing their rationale for it," courts may "inquire into the basis" of such award where there appears to be no legal or factual support for it. *Koch Oil, S.A. v. Transocean Gulf Oil Co.*, 751 F.2d 551, 554

(2d Cir.1985) (citing *Kurt Orban Co. v. Angeles Metal Sys.*, 573 F.2d 739, 740 (2d Cir.1978)). Recognizing that "if there is to be any meaningful judicial review, an arbitrator's award cannot be absolutely immune from scrutiny," courts sometimes remand awards to arbitrators for clarification. *Siegel v. Titan Indus. Corp.*, 779 F.2d 891, 894 (2d Cir.1985) (citations omitted); *see also Olympia & York Florida Equity Corp. v. Gould*, 776 F.2d 42, 45–46 (2d Cir.1985); *Clemons v. Dean Witter Reynolds, Inc.*, 708 F.Supp. 62, 64 (S.D.N.Y.1989).

judgment" can be inferred from the facts of the case. *Westerbeke Corp. v. Daihatsu Motor Co. Ltd.*, 304 F.3d 200, 212 n. 8 (2d Cir.2002) (citations omitted).

## III. DISCUSSION

Tripi argues that the Panel manifestly disregarded the law and evidence presented at the hearing, which require an award of greater damages upon a finding of liability.[6] Prudential contends that there is a plausible reading of the Award that is consistent with the law and evidence. While the record is replete with evidence of Prudential's liability, there is also evidence supporting a reduction of the claimed damages. There is, however, no apparent basis in the record for the specific amount the Panel chose to award.

### A. Evidence Supporting a Reduction in Damages

 There is some evidence in the record to support Prudential's defenses of ratification[7] and failure to mitigate damages,[8] thereby justifying an apportionment of damages. Tripi acknowledged that he received written confirmations of all trades in his account (which calculated Malloff's commissions for each trade), received monthly account statements, and sometimes accessed his account on the computer.[9] *See* 4/16/02 Transcript of Arbitration Proceedings ("4/16/02 Tr."), Ex. D to Pet., at 294–95; *see also* Monthly Account Statements, Ex. A to 8/6/03 Affidavit of Edwin A. Zipf, counsel for Prudential ("Zipf Aff."); Printout of Internet Enrollment Screen for Tripi's Account, Ex. B to Zipf Aff. Tripi testified, however, that he did not often look at the confirmations and monthly statements because he "cared about the bottom line"—rather than how the account was grown. 4/17/02 Transcript of Arbitration Proceedings ("4/17/02 Tr."), Ex. E to Pet., at 770; *see also* 4/16/02 Tr. at 294, 316–17, 387. Tripi also testified that he never objected, either orally or in writing, to any transaction or to Malloff's alleged failure to follow his instructions. *See id.* at 295–96, 374–75; *see also id.* at 272 (also admitting that he did not enforce Malloff's alleged promise to call him before making every trade). The Panel may have found, based on this evidence, that Tripi either ratified the transactions or failed to mitigate his damages, thereby warranting a reduction in his

---

6. Tripi contends that the proper assessment of damages should have been $980,000 (account value at the time Malloff allegedly failed to comply with his liquidation order) minus $177,481.67 (account value as of November 30, 1999, the date the alleged misfeasance ceased), which equals $802,518.33. *See* Petitioner's Memorandum of Law in Support of his Petition to Vacate Arbitration Award ("Pet.Mem.") at 19.

7. "Ratification occurs when it is clear from all the circumstances, including failure to object within a reasonable time, that the customer intends to adopt the trade as his own." *In re Thomson McKinnon Sec., Inc.*, 191 B.R. 976, 988 (S.D.N.Y.1996).

8. A plaintiff cannot recover for losses caused by his own failure to take reasonable steps to mitigate his damages. *See Air et Chaleur, S.A. v. Janeway*, 757 F.2d 489, 494 (2d Cir.1985); *Novelty Textile Mills, Inc. v. C.T. Eastern, Inc.*, 743 F.Supp. 212, 219 (S.D.N.Y.1990) (citation omitted).

9. Prudential generates a written confirmation of each transaction for its customers, which provides that the transaction "shall be conclusive if not objected to in writing addressed to the branch manager ... within five days." Respondent's Memorandum of Law in Opposition to Petition to Vacate Arbitration Award and in Support of Respondent's Application to Confirm the Award ("Resp.Mem.") at 2. The account statements provide: "This statement is an official record of your account. All statements sent to you shall be considered binding upon you if not objected to in writing within 10 days." *Id.*

damages award.[10] *See* 4/17/02 Tr. at 764 (arbitrator questioning Tripi about his responsibility for his losses "based on the fact that [he] didn't apparently look at [his] confirmations or statements . . .").

Tripi argues that the Panel disregarded uncontroverted evidence that Malloff failed to follow Tripi's January 1999 instruction to liquidate his stock into cash. *See* Pet. Mem. at 9, 11–12. However, Malloff denied receiving any such directive, *see* 4/16/02 Tr. at 531, and Tripi presented no written evidence of the instruction. Thus, the Panel could have found that Tripi never gave the instruction to Malloff, which is a credibility determination that I cannot question. Even if the Panel found that Malloff failed to follow Tripi's instruction, the Panel could have found that Tripi failed to mitigate his damages by not complaining to anyone at Prudential about Malloff's failure to follow his alleged instruction.[11] *See id.* at 362.

■ Tripi additionally argues that the Panel manifestly disregarded evidence of churning because Prudential employees testified that the commission velocity, account turnover, and number of trades in Tripi's account were unprecedented. *See*

*id.* at 429–30. There is, however, conflicting evidence in the record regarding Tripi's investment objectives. *Compare* 4/15/03 Transcript of Arbitration Proceeding ("4/15/03 Tr."), Ex. C to Pet., at 44, 58 (portraying himself as an inexperienced investor who could not afford to lose his retirement fund) *with* 4/16/03 Tr. at 376, 390 (admitting that he wanted to be "aggressive" about his investments).[12] Thus, the Panel could have found that the trading in the account, while active, was not excessive in light of Tripi's desire to trade aggressively.[13] As a result, there is a basis in the record for the arbitrators' decision to award Tripi less than the full amount of his losses.

### B. Compensatory Damages Award

■ However, it is hard to imagine *any* justification for the arbitrators' award, which holds Prudential responsible for only three percent of Tripi's losses. The arbitrators have provided no clue as to how they arrived at a 97/3% split. In fact, when questioned about the arbitrariness of the apportionment, *see* 5/12/02 Ltr., the Panel specifically declined to provide an

---

10. One of the arbitrators questioned Tripi about his responsibility for his losses "based on the fact that [he] didn't apparently look at [his] confirmations or statements . . ." 4/17/02 Tr. at 764; *see also id.* at 770.

11. Tripi contends that the fees would have been allocated equally between the parties had the Panel found that Tripi failed to mitigate his damages. *See* Pet. ¶ 43; Pet. Mem. at 16. No provision in the NASD Code of Arbitration Procedure precludes an arbitration panel from awarding all the filing and forum fees against a party, even if the other party failed to mitigate his damages. *See* NASD Code of Arbitration Procedure ("Arb.Pro.") ¶ 10332(c) ("The arbitrators, in their awards, shall determine the amount chargeable to the parties as forum fees and shall determine who shall pay such forum fees.").

12. I note, in passing, that Tripi is a manual laborer who makes approximately $50,000 per year. *See* Pet. ¶ 14.

13. Tripi also contends that the Panel acted in manifest disregard of the law and facts by not awarding him punitive damages. There is no requirement that an arbitration panel award punitive damages. While the NASD's Code of Arbitration Procedure authorizes the award of punitive damages, it does not set a standard that should be followed in determining whether punitive damages should be awarded. *See* Arb. Pro. ¶ 10330(e). Thus, the Panel acted within its discretion in not awarding punitive damages.

explanation, *see* 5/22/02 Ltr. Nor has Prudential pointed to any facts in the record to support such a bizarre award.[14]

Given the strong evidence in the record of Prudential's liability, the Court cannot discern how the Panel arrived at such a disproportionate allocation of liability. Such a meager award shocks the conscience of this Court. Indeed, I would not hesitate to set aside such an incomprehensible award if it were a jury verdict. *See United States v. Chin,* 934 F.2d 393, 398 (2d Cir.1991) (acknowledging that a verdict may be set aside where it is "so offensive that it shocks the conscience"). In light of the highly deferential standard due an arbitral award, however, I will remand to the Panel with instructions that it explain its allocation of damages. After the Panel provides its explanation, either party may return to this Court to confirm, modify, or vacate the Award.

## IV. CONCLUSION

For the foregoing reasons, this action is remanded for clarification of the compensatory damages award.

---

**14.** The evidence of Prudential's liability is bolstered by the fact that Tripi's losses were sustained at a time when the market experienced significant growth, making the Award even more troubling. *See* Dow Jones Industrials From 1/4/99 to 11/30/99 *available at*

http://www.moneycentral.msn.com (indicating that the Dow Jones Industrial Average gained approximately 1700 points from January 1999 to November 1999, which is roughly a 15% increase).