**Donald CARTER; Kathryn S. Carter, Plaintiffs–Appellants,**

v.

**HEALTH NET OF CALIFORNIA, INC., Defendant–Appellee.**

**No. 03–15544.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 12, 2004.

Filed July 6, 2004.

Jeffrey H. Ochrach, Roseville, CA, for the plaintiffs-appellants.

Lawrence J. Rose, Epstein Becker & Green, San Francisco, CA, for the defendant-appellee.

Before: B. FLETCHER, TROTT, and FISHER, Circuit Judges.

BETTY B. FLETCHER, Circuit Judge.

Donald Carter ("Carter") and his daughter Kathryn Carter ("Katie") appeal the district court's order vacating an arbitration award against Health Net of California ("Health Net"), an insurance company, on the ground that the arbitrator did not have jurisdiction over Health Net. The Carters argue that the district court lacked subject-matter jurisdiction over the opposing petitions to vacate and confirm the arbitration award because neither presented a federal question. We agree, and remand this case to the district court for remand to state court.[1]

## I.

On a Member Enrollment and Change Form provided by his employer, Grafil, Inc., Donald Carter selected the Preferred Provider Organization (PPO) insurance product as his employer-sponsored health insurance plan. The header of the form included the logo "Health Net: California's Health Plan," while the fine print on the form stated that Health Net Life Insurance ("HNL") would be the underwriter for the Flex Net and PPO insurance plans, and Health Net would underwrite the other plans. The form also included a mandatory arbitration clause requiring each employee-signatory to submit to arbitration any dispute, except medical malpractice, "regarding the performance, interpretation or breach of the agreement between [him or an enrolled family member]" and Health Net, HNL, or physicians participating in the plan. HNL is a wholly-owned subsidiary of Health Net,[2] and under an Administrative Services Agreement, HNL retained Health Net to serve as the contract administrator for the PPO plan.

As a result of Carter's selection of the PPO plan, HNL issued a Certificate of Insurance ("Certificate") outlining the coverage provided by the insurance plan. The Certificate stated, *inter alia*, that "HNL . . . agrees to provide benefits as described in this Certificate to the Subscriber and eligible Family Members." With regard to arbitration, it stated that "any dispute or controversy concerning the construction, interpretation, performance, or breach of this Certificate arising between the Employer, a Subscriber or eligible Family Member . . . and HNL . . . shall be submitted to arbitration under the appropriate rules of the American Arbitration Association," and that the arbitral award "shall be governed by applicable state and federal statutory and case law."

Six months after selecting the PPO plan, Carter asked for a pre-determination of medical insurance benefits for dental surgery proposed for his daughter, Katie.

---

1. In holding that the district court lacked federal question jurisdiction, we need not—and do not—reach the Carters' remaining claims, that the district court erred in finding that Health Net could not be bound by the arbitration award, and that no valid basis existed to vacate the award.

2. Health Net of California is, in turn, a wholly-owned subsidiary of Health Net, Inc., a Delaware corporation.

The request was submitted to Health Net as plan administrator. Health Net determined that no medical benefits were available for Katie's jawbone reconstructive surgery. After an appeal by the Carters, Health Net issued its final decision denying coverage for Katie's treatment. In both communications, Health Net reminded Carter that his sole recourse was arbitration of his claim through the American Arbitration Association (AAA).

The Carters initiated arbitration to recover the cost of Katie's surgery. Though their initial Demand for Arbitration named only Health Net as a defendant, they later asked to amend the Demand to add HNL as a new defendant. The arbitrator granted the request, but subsequently reversed the decision when the Carters withdrew their request to add HNL. HNL was dismissed without prejudice, over its protests that "it was the real party in interest, in that it was the party in contractual privity with claimant's employer, and the underwriter for the employer's medical benefits plan," and the arbitration proceeded against Health Net alone.

The arbitrator issued interim and final awards in favor of the Carters. The Carters filed a petition in California Superior Court under the California Arbitration Act, CAL. CIV. PROC. CODE § 1280 et seq., to confirm the arbitration award against Health Net, and requested attorney's fees "incurred in relation to this petition pursuant to the applicable provisions of ERISA." Health Net removed the case to federal court, where the Carters' motion to remand to state court was denied. Health Net then petitioned to vacate the arbitration award, also under the California Arbitration Act, on the grounds that the arbitrator had exceeded his authority, had refused to hear material evidence, and had failed to disqualify himself for appearance of bias. Citing *American Builder's*

*Ass'n v. Au–Yang*, 226 Cal.App.3d 170, 276 Cal.Rptr. 262 (Ct.App.1990), the district court *sua sponte* requested briefing on the issue of whether the arbitrator had jurisdiction over the parties to the arbitration. In its final order, the court vacated the arbitration award, holding that the arbitrator had exceeded his powers by exercising jurisdiction over and issuing an award against Health Net, because it was not a signatory to the arbitration agreement contained in the Certificate of Insurance. The Carters filed a timely notice of appeal.

## II.

We review decisions on subject matter jurisdiction de novo. *Arizona Pub. Serv. Co. v. Aspaas*, 77 F.3d 1128, 1132 (9th Cir.1995). It is well-established that even when a petition is brought under the Federal Arbitration Act (FAA), a petitioner seeking to confirm or vacate an arbitration award in federal court must establish an independent basis for federal jurisdiction. *Southland Corp. v. Keating*, 465 U.S. 1, 15 n. 9, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (noting that "[w]hile the Federal Arbitration Act creates federal substantive law requiring the parties to honor arbitration agreements, it does not create any independent federal-question jurisdiction"); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (same); *Garrett v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 882, 883–84 (9th Cir.1993) (discussing Supreme Court cases and collecting Ninth Circuit precedent and cases from other circuits applying this jurisdictional principle). In this case, where the petitions to confirm and vacate the arbitration award are brought under a state arbitration statute, it is even clearer that the parties must establish either diversity or federal question jurisdic-

tion before a federal court may hear their claims.

Diversity of citizenship is absent in this case: the Carters are residents of California, and Health Net is a California corporation. Thus, in order for the district court to have exercised valid jurisdiction over the case, the petitions must have presented a federal question. Health Net offers two arguments in support of its assertion that the district court had federal question jurisdiction: first, that the Carters made a specific request for affirmative relief under ERISA by requesting attorney's fees under § 502(g)(1) of that statute, 29 U.S.C. § 1132(g)(1); and second, that the Carters asserted claims of a uniquely federal character in the underlying dispute.

■ A request for attorney's fees cannot be a basis for federal jurisdiction. Section 502(g)(1) is a classic fee-shifting provision, similar to that invoked in cases brought under 42 U.S.C. § 1983. *Compare* 29 U.S.C. § 1132(g)(1) ("In any action under this title ... the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."), *with* 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of section[ ] ... 1983 ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs ...."). We have previously held that " 'fee shifting provisions cannot themselves confer subject matter jurisdiction' that is otherwise absent." *In re Knight*, 207 F.3d 1115, 1117 (9th Cir.2000) (quoting *Branson v. Nott*, 62 F.3d 287, 293 (9th Cir.1995), and extending *Branson's* § 1983–related holding to requests for attorney's fees under § 502(g)(1) of ERISA).

The valid exercise of federal question jurisdiction therefore depended upon the substantive claims raised in the Carters' petition to confirm the award. If the district court lacked subject matter jurisdiction over the petition, it could not have exercised jurisdiction based on the request for fees. *See id.* at 1119. On its face, the Carters' petition raised no federal question, relying instead on California arbitration law as the basis for confirmation. Apart from the invocation of ERISA's fee-shifting provision discussed above, the only federal claims involved in the case were those raised in the underlying arbitration.

Health Net's second argument supporting jurisdiction, based on the "uniquely federal character" of those claims, is also unpersuasive. Since no case in this circuit has discussed federal question jurisdiction in the context of a state arbitration statute, we must look to cases analyzing federal statutes governing arbitration. The parties offer two choices: the Labor Management Relations Act (LMRA), and the FAA. For the reasons set forth below, we find the cases construing the FAA persuasive, and extend their reasoning to petitions brought under state arbitration statutes.

In *Johnson v. England*, a case relied upon by Health Net, we held that an action to compel arbitration of a labor contract dispute was within federal jurisdiction under the LMRA, and therefore removable under 28 U.S.C. § 1441. 356 F.2d 44, 46–48 (9th Cir.1966). We specifically rejected the appellants' argument that the petition and complaint raised solely issues of state law and sought only a state-law remedy, and held that removal was proper "since in effect § 301(a) [of the LMRA] operated to preempt this field of law, a fair construction of the complaint here filed must be that it is necessarily one pursuant to § 301(a)." *Id.* at 48. A similar approach was adopted by the district court in this case, which relied upon

ERISA's "complete" pre-emption of the underlying subject matter of the dispute to ground its exercise of jurisdiction.

Health Net's reliance on *Johnson* is misplaced. Unlike the FAA or state arbitration statutes, the LMRA can be used as a basis for federal question jurisdiction over actions to compel arbitration, as well as petitions to confirm or vacate arbitration awards. *See United Broth. of Carpenters and Joiners, Local No. 1780 v. Desert Palace, Inc.*, 94 F.3d 1308, 1309 (9th Cir. 1996) (noting that the district court had federal question jurisdiction over an action to compel arbitration under § 301 of the LMRA, 29 U.S.C. § 185); *see also Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38*, 351 F.3d 43, 45 (2d Cir.2003) (per curiam) (noting that § 301(a) conferred federal question jurisdiction over action to vacate arbitration award); *Brown v. Witco Corp.*, 340 F.3d 209, 213 n. 5 (5th Cir.2003) (holding that § 301 jurisdiction extends to suits seeking to enforce an arbitration award, and citing *Carrion v. Enterprise Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 34 (2d Cir.2000), and *Cleveland v. Porca Co.*, 38 F.3d 289, 296 & n. 5 (7th Cir.1994)). Indeed, arbitration of labor disputes is unique: the FAA and its requirement of an independent basis for federal jurisdiction do not apply at all to arbitration of disputes under the LMRA. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 n. 9, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). For questions of jurisdiction over petitions invoking solely a state arbitration statute, therefore, the appropriate parallel cannot be to the statute that itself provides federal question jurisdiction. Cases involving the LMRA are simply inapplicable.

Our cases discussing the FAA, the federal statute that requires parties to establish federal jurisdiction independently, are more helpful. In *Luong v. Circuit City Stores*, we followed four other circuits in holding that § 10 of the FAA, which lists the grounds for vacatur of an arbitration award, does not create federal question jurisdiction "even when the underlying arbitration involves a federal question." 368 F.3d 1109, 1111 (9th Cir.2004) (citing *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 25–27 (2d Cir.2000), *cert. denied*, 531 U.S. 1075, 121 S.Ct. 770, 148 L.Ed.2d 669 (2001); *Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1247 (D.C.Cir.1999); *Minor v. Prudential Secs., Inc.*, 94 F.3d 1103, 1107 (7th Cir.1996); *Ford v. Hamilton Invs., Inc.*, 29 F.3d 255, 257–58 (6th Cir.1994)).

■ As the jurisprudence of this and other circuits demonstrates, this holding is not limited to petitions to vacate under § 10. *See, e.g., Perpetual Secs., Inc. v. Tang*, 290 F.3d 132, 140 (2d Cir.2002) (holding that district court erred in determining that § 9 conferred jurisdiction to confirm an arbitration award rendered in dispute concerning securities law); *Collins v. Blue Cross Blue Shield of Mich.*, 103 F.3d 35, 38 (6th Cir.1996) ("[N]either the FAA nor the underlying arbitrated [ADA] claim provide[s] an independent basis of federal jurisdiction in an action to confirm or vacate an arbitration award."); *see also Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 969 (9th Cir.1981) ("[A]pplicants who ... seek confirmation of an arbitration award under 9 U.S.C. § 9 must demonstrate independent grounds of federal subject matter jurisdiction."); *cf. Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Group, Inc.*, 187 F.3d 1045, 1050 n. 5 (9th Cir.1999) (recognizing a "substantial body of case law" from four circuits, under which "the existence of a federal question in the underlying dispute is not sufficient to create subject matter jurisdiction over a petition to compel arbi-

tration under § 4 of the FAA," but declining to adopt this approach as unnecessary to the disposition of the case). With reasoning equally applicable to petitions to confirm awards under § 9 of the FAA, the Second Circuit concluded that in petitions brought under §§ 4 and 10 of the Act,

> there is no necessary link between the requested relief and the character of the underlying dispute. For example, a petition to compel arbitration because the dispute falls within the scope of an arbitration clause, or to vacate an award because the arbitrators exceeded their powers under that clause, will turn on the interpretation of the clause, regardless of whether the actual dispute implicates any federal laws. Accordingly, the fact that the arbitration concerns issues of federal law does not, standing alone, confer subject matter jurisdiction on a federal district court to review the arbitral award.

*Greenberg,* 220 F.3d at 26. A clear jurisdictional principle has emerged from these cases: the presence of federal questions in an underlying arbitration is insufficient to provide an independent basis for federal question jurisdiction to review an arbitration award under the FAA.

 Our analysis does not end there, however. *Luong* also adopted *Greenberg's* qualification of this general principle, where the Second Circuit held that "federal jurisdiction may still lie if the ultimate disposition of the matter by the federal court necessarily depends on resolution of a substantial question of federal law," such as when the petition primarily asserts as grounds for vacatur the arbitrator's manifest disregard of federal law. *Id.* (internal quotation marks omitted); *see Luong,* 368 F.3d at 1112. The *Greenberg* court did not consider its holding an exception to the general jurisdictional principle, but rather a logical extension of the well-pleaded complaint rule and a corollary to the idea that underlying federal issues are insufficient:

> In our view, under these standards, whether or not a petition to vacate under § 10 raises a substantial federal question turns on the ground for the petitioner's challenge to the award.

*Greenberg,* 220 F.3d at 26. In *Luong,* we held that "a federal question for purposes of subject matter jurisdiction must be presented in a well-pleaded petition." 368 F.3d at 1111. We explained our adoption of the Second Circuit's approach by noting that "*Greenberg* makes a forceful case for why the *ground* asserted in the petition to vacate makes a difference for purposes of federal question jurisdiction," because a claim of manifest disregard, unlike the grounds for vacatur specifically listed in § 10, " 'so immerses the federal court in questions of federal law and their proper application that federal question subject matter jurisdiction is present.' " *Id.* at 1112 (emphasis in original) (quoting *Greenberg,* 220 F.3d at 27). Under our FAA jurisprudence, therefore, it is not the presence of federal issues in an underlying arbitration that determines whether federal question jurisdiction exists, but rather the grounds asserted for federal review in a well-pleaded petition. Similarly, petitioners relying on state arbitration statutes must establish in their petitions for confirmation or vacatur that "the ultimate disposition of the matter by the federal court necessarily depends on resolution of a substantial question of federal law." *Greenberg,* 220 F.3d at 26 (internal quotation marks omitted); *see also Perpetual Sec.,* 290 F.3d at 139 (clarifying *Greenberg,* and holding that mere allegation of manifest disregard is insufficient to confer federal question jurisdiction if federal claims are completely without merit); *Yokeno v. Mafnas,* 973 F.2d 803, 808 (9th Cir.1992) (holding that federal question jurisdiction

is unavailable where federal claim "is patently without merit" (quoting *Brock v. Writers Guild of Am., West, Inc.*, 762 F.2d 1349, 1352 n. 3 (9th Cir.1985), which relied on *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 70–71, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978))).

### III.

■ The petitions at issue in this case do not raise substantial questions of federal law. The Certificate of Insurance states that the California Arbitration Act "governs any motion to vacate, modify or correct an award issued in connection with the policy." The Carters' petition to confirm the award was brought in California Superior Court, and primarily invoked provisions of the California Arbitration Act. The Carters' only reference to a federal statute was their previously discussed request for attorney's fees, which was insufficient to give the district court jurisdiction over the case. No other federal question was raised by the Carters' petition.

Nor was Health Net's petition to vacate the award a basis for federal question jurisdiction. This petition, first brought in district court after Health Net successfully defended removal, relied solely on California law, and argued that the award should be vacated because the arbitrator exceeded his contractually-defined powers (by failing to conform the award to ERISA's requirements); he refused to hear material evidence; and he failed to disqualify himself for appearance of bias. The statutory citations provided were to the relevant sections of the California Arbitration Act, CAL. CIV. PROC. CODE § 1286.2(a)(4), (5), and (6). No reference was made to the FAA, nor to any federal common law doctrine for vacatur, such as irrationality or manifest disregard of federal law. *See Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128, 1132–33 (9th Cir.2003) (listing federal law grounds for vacatur); *Todd Shipyards Corp. v. Cunard Line, Ltd.*, 943 F.2d 1056, 1059–60 (9th Cir.1991) (suggesting that manifest disregard of federal law really defines § 10(d) of the FAA).[3]

Only Health Net's first ground for vacatur—failure to conform the award to ERISA's requirements—could possibly satisfy *Greenberg's* requirement of a substantial federal question. Even in *Greenberg*, however, the Second Circuit was careful to limit its holding to petitions complaining "principally and in good faith that the award was rendered in *manifest disregard of federal law.*" 220 F.3d at 27 (emphasis added).[4] In *Luong*, relying on that language, we concluded that federal question jurisdiction existed over the appellant's petition because it explicitly alleged

---

3. The cases cited by Health Net to support the district court's exercise of jurisdiction, which discuss ERISA's near-complete pre-emption of state law in the area of employer-sponsored insurance plans, are inapposite. Health Net's claims do not arise under ERISA, but rather under the California Arbitration Act. The preemptive effect of ERISA, and the subsequent exception to the well-pleaded complaint rule for cases arising under that statute, are irrelevant to the issue of whether Health Net's arbitration-related petition raises a federal question.

4. Furthermore, we have found no case in which a court applying the *Greenberg* approach has found federal question jurisdiction to exist in the absence of a petition alleging manifest disregard of federal law. *See, e.g., Perpetual Secs.*, 290 F.3d at 139 (noting the allegation of manifest disregard, but holding that federal question jurisdiction was lacking because the claim was patently without merit); *Luong*, 368 F.3d at 1112; *cf. Smith v. Rush Retail Ctrs., Inc.*, 291 F.Supp.2d 479, 489 (W.D.Tex.2003) (finding that although petition made conclusory allegation of manifest disregard, the specific reasons for vacatur asserted either referred to other grounds listed in § 10, or actually complained of violations of state law).

manifest disregard of federal law, specifically the Americans with Disabilities Act. 368 F.3d at 1110, 1112. Even though Health Net did not specifically use the term "manifest disregard of federal law," in an abundance of caution, we look to the substance of its arguments on this first ground to determine whether they essentially claim that the arbitrator manifestly disregarded federal law.

Health Net presented three arguments to the district court to support its assertion that the arbitration award failed to conform to federal law: (1) ERISA precluded the arbitrator's award of benefits against Health Net, a plan administrator; (2) the arbitrator's disregard of HNL's distinct corporate identity could not be sustained under ERISA; and (3) the award of damages exceeded the amount available under ERISA. Even construing these arguments liberally, none meets our standard for asserting manifest disregard of federal law.

■ As federal courts of appeals have repeatedly held, " '[m]anifest disregard of the law' means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law. It must be clear from the record that the arbitrators recognized the applicable law and then ignored it." *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir.1995) (citing cases from this and three other circuits); *see also Fahnestock & Co. v. Waltman*, 935 F.2d 512, 516 (2d Cir.1991) ("Illustrative of the degree of 'disregard' necessary to support vacatur under this standard is our holding that manifest disregard will be found where an arbitrator understood and correctly stated the law but proceeded to ignore it.") (internal quotation marks omitted). As such, mere allegations of error

are insufficient. *See Luong,* 368 F.3d at 1112 (holding that " 'manifest disregard of the law' has a well-defined meaning that Luong's petition cannot possibly meet" because it was clear from the record that the arbitrator did not ignore the relevant law); *Thompson v. Tega–Rand Int'l,* 740 F.2d 762, 763 (9th Cir.1984) (per curiam) ("Manifest disregard of the law has been defined as something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law.") (internal quotation marks omitted). Last, "[j]udicial inquiry under the 'manifest disregard' standard is ... extremely limited. The governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 934 (2d Cir.1986), *cited with approval in Mich. Mut. Ins. Co.,* 44 F.3d at 832; *accord Prestige Ford v. Ford Dealer Computer Servs., Inc.,* 324 F.3d 391, 395 (5th Cir.2003).

■ At no point in the three-and-a-half page explication of its first ERISA argument does Health Net assert that the arbitrator knew the applicable law and disregarded it; on the contrary, its primary complaint is that the arbitrator made an erroneous factual finding that Health Net was not the administrator of the plan. Errors of fact do not generally constitute manifest disregard of federal law. *See Coutee,* 336 F.3d at 1133 (distinguishing disregard of facts from disregard of law, and holding that "[m]anifest disregard of the facts is not an independent ground for vacatur in this circuit").[5] Nor is Health Net's claim that the arbitrator erroneously ignored HNL's separate corporate identity sufficient to allege that he thus manifestly disregarded the applicable federal stan-

---

**5.** Moreover, in direct opposition to Health Net's claim in the petition that "the estab-'

lished ERISA case law of the Ninth Circuit is clear that Health Net of California is not the

dard. Health Net complained that the arbitrator favored California law over what it asserted was the correct federal law on alter ego determinations, yet "[i]t is well settled that when ERISA is silent on an issue, we may turn to state law to fashion the appropriate federal common-law rule." *Hotel Employees & Rest. Employees Int'l Union Welfare Fund v. Gentner*, 50 F.3d 719, 721 (9th Cir.1995).[6] Last, Health Net's final argument about excessive damages failed to assert that ERISA or any other federal law limited the arbitrator's award of benefits against the insurance company. Conceding that ERISA imposes no obligation upon plan participants to search for lower-cost medical care, Health Net nevertheless asserted that the award of the full amount of Katie's medical bills violated the express terms of the Carters'

insurance plan. Resolution of this claim turns upon the arbitrator's interpretation of the insurance contract; it is not an allegation of manifest disregard of federal law.

Since Health Net's petition for vacatur of the arbitration award neither asserted manifest disregard of federal law nor presented any other substantial federal question, the district court lacked subject matter jurisdiction over the case. We therefore vacate its decision, and remand the case in order for the district court to remand to state court.

VACATED AND REMANDED WITH INSTRUCTIONS TO REMAND.

proper respondent," one of the cases it cites for this proposition unequivocally states that there are two lines of cases *within our circuit* on the question of whether ERISA permits suits to recover benefits against plan administrators, and notes that this and other circuits have concluded that such actions are permissible. *Everhart v. Allmerica Fin. Life Ins. Co.*, 275 F.3d 751, 754 (9th Cir.2001), *cert. denied*, 536 U.S. 958, 122 S.Ct. 2662, 153 L.Ed.2d 836 (2002) (discussing, *inter alia*, the line of cases exemplified by *Taft v. Equitable Life Assur. Soc'y*, 9 F.3d 1469, 1471 (9th Cir. 1993), and declining to "determine which line of cases more accurately states the law").

Alternatively, therefore, even if this argument could be construed as asserting manifest disregard of federal law, it is so patently without merit that it cannot ground federal question jurisdiction. *See Yokeno*, 973 F.2d at 808. We emphasize that this conclusion says nothing about the ultimate accuracy of Health Net's contention that plan administrators cannot be defendants in suits to recover benefits under ERISA insurance plans. That question remains unresolved in our circuit, and thus cannot be the basis for an allegation of manifest disregard of federal law. For the same reasons, the arbitrator's decision about Health Net's status cannot have been in manifest disregard of legally dispositive facts, as

that concept is explained in *Coutee*. *See* 336 F.3d at 1133 (holding that "an arbitrator's failure to recognize undisputed, legally dispositive facts may properly be deemed a manifest disregard for the law").

6. It is also far from clear that the alter ego standard cited by Health Net was ever intended to apply to ERISA cases. *Compare Audit Servs., Inc. v. Rolfson*, 641 F.2d 757, 764 (9th Cir.1981) (holding that "in resolving questions regarding disregard of corporate entity in actions to recover fringe benefit fund payments [under the LMRA], we look primarily to federal law" and listing three factors, including the "fraudulent intent of the incorporators"), *with Gentner*, 50 F.3d at 722 (distinguishing the attorney-client relationship from other cases finding an alter ego relationship, because in those cases "the signatory was really the same as, or acting on behalf of the nonsignatory, so the acts of the former clearly bound the latter," with no mention of fraud), *and Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir.1997) (holding that "federal common law allows piercing of the corporate veil where a corporation uses its alter ego to perpetrate a fraud *or* where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own") (emphasis added).