United States Court of Appeals
 For the First Circuit

No. 16-1122

 LUIS ORTIZ-ESPINOSA; MARITZA SOTO-GARCIA; CONJUGAL PARTNERSHIP
 ORTIZ-SOTO; LUIS ORTIZ-ESPINOSA, as Trustee of Centro
 Dermatológico San Pablo PSC Retirement Plan,

 Plaintiffs, Appellants,

 v.

BBVA SECURITIES OF PUERTO RICO, INC.; RAFAEL RODRÍGUEZ-ABELLA,

 Defendants, Appellees.

 APPEAL FROM THE UNITED STATES DISTRICT COURT
 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

 Before

 Howard, Chief Judge,
 Dyk* and Thompson, Circuit Judges.

 Harold D. Vicente Colon, with whom Harold D. Vicente-
González and Vicente & Cuebas were on brief, for appellants.
 Luis A. Oliver, with whom Melissa Hernández-Carrasquillo
and Fiddler González & Rodríguez, PSC were on brief, for
appellees.
 Mark C. Fleming, Ari J. Savitzky, Peter J. Macdonald, Ross
E. Firsenbaum, Adriel I. Cepeda Derieux, Michael J. Morillo, and

 * Of the Federal Circuit, sitting by designation.
Wilmer Cutler Pickering Hale and Dorr LLP on brief for UBS
Financial Services Inc. and UBS Financial Services Incorporated
of Puerto Rico, amici curiae.

 January 20, 2017

 -2-
 DYK, Circuit Judge. This case requires us to

determine the test for district court federal question

jurisdiction in the context of motions to vacate or modify an

arbitration award. This turns on whether the court may look

through the motion to the underlying dispute to determine

whether the court would have federal question jurisdiction.

Here, the district court applied the look-through test, finding

that jurisdiction existed and that there was no basis for

setting aside the award. We affirm, holding that the look-

through approach is the correct test, that federal jurisdiction

existed, and that the district court did not err in refusing to

vacate the award and in confirming it.

 I.

 In 2006, appellants Dr. Luis Ortiz-Espinosa and his

wife, Maritza Soto-García; the conjugal partnership formed by

them (Espinosa-Soto); and Luis Ortiz-Espinosa, as trustee of

Centro Dermatológico San Pablo PSC Retirement Plan, opened two

sets of brokerage investment accounts with BBVA Securities of

Puerto Rico, Inc. (“BBVA”). The accounts included personal

accounts for the married couple and accounts for a retirement

plan. Rafael Rodríguez-Abella, a securities broker employed at

BBVA, managed the accounts. The married couple deposited

$2,113,154 into the personal accounts and $491,054 into the

retirement plan accounts. By September 2009, the accounts had

 - 3 -
collectively suffered large losses in the amount of $2,049,340.

The married couple believed that BBVA and Rodríguez-Abella were

responsible for the losses. The brokerage agreements provided

for arbitration of disputes before the Federal Industry

Regulatory Authority (“FINRA”).

 On March 25, 2010, the married couple and

representatives of the retirement plans (hereinafter,

“claimants”) sought arbitration with BBVA and Rodríguez-Abella

in the FINRA forum. We refer to BBVA and Rodríguez-Abella as

“defendants.” In their statement of claim requesting

arbitration, claimants alleged that between 2006 and 2009,

defendants

 in total disregard and open violation of the
 instructions received from [c]laimants and of
 [c]laimants’ investment objectives, engaged in a
 pattern of unsuitable investments in high risk
 securities, with the sole objective of maximizing
 commissions or trading profits for [defendants], while
 deceiving [c]laimants about the true nature of the
 investments made by [defendants] in the Accounts.
 Said investments were made by [defendants] without
 consulting [c]laimants, and [defendants] exercised
 unauthorized discretion in the handling of the
 Accounts.

Appellants’ Appx. 23–24.

 Claimants asserted several claims under both federal

and Puerto Rico law, alleging, inter alia, violations of Section

10(b) of the Securities Exchange Act, Rule 10b-5 of the

Securities Exchange Commission, and also the securities laws of

 - 4 -
Puerto Rico. The statement of claim alleged claims under state

tort and contract law as well. With respect to the retirement

plan accounts, claimants also alleged that the investments and

margin loans were violations of the Employee Retirement Income

Security Act. Finally, in addition to compensatory damages in

the amount of at least $2,102,976, claimants sought punitive

damages, interest, attorney’s fees, expenses, and disgorgement

of defendants’ commissions and service fees.

 A FINRA arbitration panel comprised of three members

conducted seventeen hearing sessions in Puerto Rico. On April

3, 2012, the arbitrators issued an award denying claimants’

claims. The award stated in its entirety:

 After considering the pleadings, the
 testimony and evidence presented at the hearing, and
 the post-hearing submissions, the Panel has decided in
 full and final resolution of the issues submitted for
 determination as follows:
 The Panel finds for Respondents and
 Claimants’ claims are denied in their entirety.
 Any and all relief not specifically
 addressed herein, including Claimants’ request for
 attorneys’ fees and punitive damages, is denied.

Appellants’ Appx. 38.

 On July 29, 2012, claimants filed a complaint

(hereinafter, “petition to vacate”) in the Puerto Rico Court of

First Instance requesting that the court vacate or modify the

arbitration award. Claimants, in their petition to vacate, did

not invoke the Federal Arbitration Act (“FAA”); instead,

 - 5 -
claimants sought relief under the Puerto Rico Arbitration Act

(“PRAA”), 32 L.P.R.A. §§ 3201 et seq. The petition alleged

various errors of the arbitrators, including the fact that they

denied claimants’ claims despite an alleged admission of

responsibility by defendants and “clear evidence” supporting

claimants’ claims on the merits. Appellants’ Appx. 15. The

petition to vacate also alleged that the arbitrators were biased

against claimants and had refused to hear relevant evidence.

 On July 30, 2012, defendants removed the case to the

United States District Court for the District of Puerto Rico

asserting that the district court had federal question

jurisdiction. There was no basis for diversity jurisdiction

because all of the parties in this case are residents of Puerto

Rico or are entities created or organized under the laws of

Puerto Rico. Defendants based their claims of federal subject

matter jurisdiction on a look-through approach, asserting that

the underlying claims were based on federal securities laws, and

that the district court would have had jurisdiction if the

claims had been filed in district court. Defendants urged that

the court also had supplemental jurisdiction over the state law

claims.

 On August 17, 2012, claimants moved to remand the case

to Puerto Rico state court for lack of jurisdiction. The

district court denied the motion for remand, holding that the

 - 6 -
court had federal question jurisdiction. It applied the look-

through approach, determining that the underlying statement of

claim alleged federal claims. Claimants filed an interlocutory

appeal of the order denying their motion to remand, but on May

28, 2013, this Court dismissed the appeal because the order was

not a final decision under 28 U.S.C. § 1291.

 On December 17, 2015, the district court denied

claimants’ petition to vacate or modify the arbitration award

and entered a judgment confirming the award, holding that

claimants “did not demonstrate any plausible ground to vacate or

modify the award.” Appellants’ Br. Add. 28. The court did not

decide whether the FAA or PRAA standards for vacating or

modifying an arbitration award applied. Instead, the court held

that “given the similarities between the FAA and PRAA with

respect to the grounds for vacating or modifying” an arbitration

award, disturbing the award “is not warranted under FAA or

PRAA.” Appellants’ Br. Add. 24 n.9. Claimants appeal both the

district court’s denial of their motion to remand and the

judgment confirming the arbitration award. We have jurisdiction

pursuant to 28 U.S.C. § 1291.

 II.

 We first consider the issue of federal question

jurisdiction. Where pertinent facts are not in dispute, we

review the district court’s determination of subject matter

 - 7 -
jurisdiction de novo. Samaan v. St. Joseph Hosp., 670 F.3d 21,

27 (1st Cir. 2012).

 Defendants argue that the FAA applies here and that

this circuit should adopt the look-through doctrine to determine

whether the district court has subject matter jurisdiction over

a motion to vacate an arbitration award. Claimants argue that

they sued under the PRAA, and alleged only state law causes of

action in their petition to vacate, so the district court did

not have subject matter jurisdiction. Furthermore, they claim

that the text of the FAA prohibits the extension of the look-

through doctrine beyond § 4. For the reasons explained below,

we agree with defendants on both points.

 Although claimants brought their petition to vacate

under 32 L.P.R.A. § 3222, the FAA applies to arbitration

agreements “in any maritime transaction or a contract evidencing

a transaction involving commerce.” 9 U.S.C. § 2; see also

Bernhardt v. Polygraphic Co. of Am., 350 U.S. 198, 200–02

(1956). The Supreme Court has suggested that the parties may

agree to review of arbitration awards under state law,

explaining that “[t]he FAA is not the only way into court for

parties wanting review of arbitration awards: they may

contemplate enforcement under state statutory or common law, for

example, where judicial review of different scope is arguable.”

Hall St. Assocs. v. Mattel, Inc., 552 U.S. 576, 590 (2008). But

 - 8 -
we read Hall Street as holding that where the FAA applies, it

may be displaced by state law (if at all) only if the parties

have so agreed explicitly. See id. Here, claimants have made

no showing that the parties “contemplate[d] enforcement under”

the PRAA, id., rather than the FAA. Claimants have not pointed

to any language in their arbitration agreement indicating that

the parties intended that state law would govern vacatur of the

arbitration award. Accordingly, we will apply the FAA.

 The FAA provides several mechanisms for enforcing

arbitration agreements and awards. Sections 3 and 4 provide

that a court may, upon application, stay litigation pending

arbitration and compel arbitration pursuant to an arbitration

agreement. 9 U.S.C. §§ 3, 4. Once an arbitration award has

issued, FAA sections 9 through 11 supply means for acquiring “a

judicial decree confirming an award, an order vacating it, or an

order modifying or correcting it.” Hall St., 552 U.S. at 582.

Upon an application to the court under § 9, the court “‘must’

confirm an arbitration award ‘unless’ it is vacated, modified,

or corrected ‘as prescribed’ in §§ 10 and 11.” Id. (quoting 9

U.S.C. § 9). Sections “10 and 11 respectively provide the FAA’s

exclusive grounds for expedited vacatur and modification.” Id.

at 584.

 An important goal of the FAA was to make arbitration

agreements enforceable in the first instance. But the post-

 - 9 -
arbitration remedies were also a central component of the FAA

structure, which sought to combat delays and expenses normally

associated with litigation to enforce awards.

 Before the FAA, “the only recourse of the successful

party was to sue in a court of law upon the award,” where the

party was “subject to the delay always incident in any action at

law and to defeat upon technicalities or otherwise in proving

the award itself.” Arbitration of Interstate Commercial

Disputes, Joint Hearings before the Subcomms. of the Comms. on

the Judiciary on S. 1005 and H.R. 646, 68th Cong., 1st Sess., 36

(1924). The FAA was viewed as solving these problems: “[u]nder

the statute, if the award is not voluntarily performed, it must

be entered as a judgment of the court, as a matter of course,

unless grounds exist for its vacation, correction, or

modification.” Id.; see also id. (“In all these proceedings

there is no material expense or delay and no opportunity for

technical procedure.”).

 The very existence of sections 9, 10, and 11

demonstrates the importance of post-award federal court review.1

 1The Seventh Circuit has suggested that § 10 is of lesser
importance than §§ 3–4 because “[t]he central federal interest
[of the FAA] was enforcement of agreements to arbitrate, not
review of arbitration decisions.” Minor v. Prudential Sec.,
Inc., 94 F.3d 1103, 1107 (7th Cir. 1996). The statutory
language and legislative history make clear that post-award
review was an important component of the statute. Other courts
have likewise not found this suggestion compelling. See Doscher
 - 10 -
Those provisions show that Congress contemplated that the

federal courts would have a central role and broad authority to

enforce arbitration agreements (including confirming, vacating,

or modifying an arbitration award). Sections 9, 10, and 11

provide that proceedings may be brought in “the United States

court in and for the district wherein the award was made.” 9

U.S.C. § 10(a)2; accord §§ 9, 11.3 While these provisions do not

v. Sea Port Grp. Sec., LLC, 832 F.3d 372, 386 (2d Cir. 2016)
(“If enforcement were Congress’s only goal, however, it would
have had no need to pass §§ 10 or 11 at all.”); Kasap v. Folger
Nolan Fleming & Douglas, Inc., 166 F.3d 1243, 1247 (D.C. Cir.
1999) (finding “little evidence supporting” this understanding).
 2 Section 10 provides, “[i]n any of the following cases the
United States court in and for the district wherein the award
was made may make an order vacating the award upon the
application of any party to the arbitration [upon satisfaction
of the conditions set forth infra in section III of the
opinion].”
 3 Section 9 provides, in relevant part,
 If the parties in their agreement have agreed that a
 judgment of the court shall be entered upon the award
 made pursuant to the arbitration, and shall specify
 the court, then at any time within one year after the
 award is made any party to the arbitration may apply
 to the court so specified for an order confirming the
 award, and thereupon the court must grant such an
 order unless the award is vacated, modified, or
 corrected as prescribed in sections 10 and 11 of this
 title. If no court is specified in the agreement of
 the parties, then such application may be made to the
 United States court in and for the district within
 which such award was made.
9 U.S.C. § 9. Section 11 provides, “the United States court in
and for the district wherein the award was made may make an
order modifying or correcting the award upon the application of
any party to the arbitration” where certain conditions are met.
9 U.S.C. § 11.

 - 11 -
themselves confer jurisdiction, they evidently contemplate that

award enforcement will occur in federal courts as a matter of

course. In fact, there is no explicit provision for post-award

enforcement in state courts.

 The Supreme Court has determined that the FAA adopted

the look-through approach with respect to petitions to compel

arbitration under 9 U.S.C § 4. In Vaden v. Discover Bank, 556

U.S. 49, 62 (2009), the Court held that a “court may ‘look

through’ a § 4 petition to determine whether it is predicated on

an action that ‘arises under’ federal law.” The proper

jurisdictional inquiry for a motion to compel arbitration is

whether, “save for [the arbitration] agreement,” the court would

have jurisdiction “over ‘a suit arising out of the controversy

between the parties.’” Id. at 70 (alteration in original)

(quoting 9 U.S.C. § 4). In so holding, the Court rejected a

test that would require the court to look to the issues

presented in the petition alone, which might include, for

example, the parties’ dispute over the arbitrability of the

claims. Id. at 63.

 The Vaden Court relied on the text of § 4, which

provides in relevant part that a party seeking to compel

arbitration “may petition any United States district court

which, save for such agreement, would have jurisdiction under

Title 28, in a civil action or in admiralty of the subject

 - 12 -
matter of a suit arising out of the controversy between the

parties.” 9 U.S.C. § 4. The Court reasoned that “[t]he phrase

‘save for [the arbitration] agreement’ indicates that the

district court should assume the absence of the arbitration

agreement and determine whether it ‘would have jurisdiction

under title 28’ without it.” Vaden, 556 U.S. at 62 (alteration

in original). The phrase, “the controversy between the

parties,” the Court explained, “is most straightforwardly read

to mean the ‘substantive conflict between the parties.’” Id. at

62–63 (quoting Discover Bank v. Vaden, 396 F.3d 366, 370 (4th

Cir. 2005)).

 The Court noted that rejecting the look-through

approach would lead to “curious practical consequences.” Id. at

65. The Court explained that if a federal court were permitted

“to entertain a § 4 petition only when a federal-question suit

is already before the court, when the parties satisfy the

requirements for diversity-of-citizenship jurisdiction, or when

the dispute over arbitrability involves a maritime contract,”

such an “approach would not accommodate a § 4 petitioner who

could file a federal-question suit in (or remove such a suit to)

federal court, but who has not done so.” Id. By contrast, the

look-through approach avoids this situation because it allows a

party to request an order compelling arbitration without first

 - 13 -
“seeking federal adjudication of the very questions it wants to

arbitrate rather than litigate.” Id.

 The Supreme Court has not decided whether the same

jurisdictional look-through approach also applies to petitions

to confirm, vacate, or modify an arbitration award under §§ 9–

11. To be sure, there is a difference in statutory language

between § 4 and the latter sections. In particular, the latter

sections do not include the “save for [the arbitration]

agreement” and “arising out of the controversy between the

parties” language relied upon by the Supreme Court in Vaden.

The question is whether this difference in language between the

pre-award enforcement provision of § 4 and the post-award

enforcement provisions of §§ 9–11 warrants a different test for

federal question jurisdiction.

 Following Vaden, there exists a split among our sister

circuits on this question. The Second Circuit has held that the

look-through approach applies at least to § 10 petitions to

vacate. Doscher, 832 F.3d at 388. By contrast, the Seventh and

Third Circuits have held the opposite: that Vaden is

distinguishable (primarily based on the difference in statutory

language) and that “a federal issue resolved by the arbitrator

does not supply subject-matter jurisdiction for review or

enforcement of the award.” Magruder v. Fid. Brokerage Servs.

LLC, 818 F.3d 285, 288 (7th Cir. 2016); see also Goldman v.

 - 14 -
Citigroup Glob. Mkts. Inc., 834 F.3d 242, 255 (3d Cir. 2016)

(look-through does not apply to § 10 motions to vacate).

 As we now explain, we agree with the Second Circuit

that the look-through approach cannot be limited to § 4

petitions to compel. Initially, we note that the mere

difference in statutory text between the sections does not

itself compel a holding that the sections are to be interpreted

differently. See Clay v. United States, 537 U.S. 522, 529–30

(2003); City of Columbus v. Ours Garage & Wrecker Serv., Inc.,

536 U.S. 424, 435–36 (2002); Martin v. Hadix, 527 U.S. 343, 355–

57 (1999); see also Merrill Lynch, Pierce, Fenner & Smith Inc.

v. Manning, 136 S. Ct. 1562, 1570–71 (2016) (construing

“completely different language”—the phrase “brought to enforce”

in § 27 of the Securities Exchange Act of 1934 and the phrase

“arising under” in 28 U.S.C. § 1331—to have the same meaning for

determining federal jurisdiction).

 There are, moreover, several important policy reasons

supporting applying the look-through approach to the award

enforcement provisions. In light of the important role intended

for the federal courts in enforcing arbitration agreements post-

award, it would make no sense to effectively exclude federal

question jurisdiction over those cases. And, the look-through

approach is the only possible approach that would provide such

federal jurisdiction.

 - 15 -
 There would seem to be only three possible tests for

“arising under” jurisdiction under 28 U.S.C. § 1331. First, FAA

§§ 9–11 could be viewed as each creating a federal cause of

action because section 10 on its face provides substantive rules

of decision for vacating an arbitration award. See Doscher, 832

F.3d at 387; Kasap, 166 F.3d at 1247.4 Such a reading would

appear to be consistent with the general rule that a court has

federal question jurisdiction where federal law creates the

cause of action and provides the rules of decision.5

 However, the Supreme Court has foreclosed this first

possibility, holding that federal question jurisdiction over

controversies involving arbitration cannot be based on the fact

that the FAA establishes the relevant substantive law. See Hall

St., 552 U.S. at 581–82; Moses H. Cone Mem’l Hosp. v. Mercury

Constr. Corp., 460 U.S. 1, 25 n.32 (1983).6

 4 See Garrett v. Merrill Lynch, Pierce, Fenner & Smith,
Inc., 7 F.3d 882, 883 (9th Cir. 1993) (noting that § 10 “appears
on its face to confer subject-matter jurisdiction”); Harry
Hoffman Printing, Inc. v. Graphic Commc’ns, Int’l Union, Local
261, 912 F.2d 608, 611 n.1 (2d Cir. 1990) (noting “that the
broad language of sections 9 and 10 of the Act might be read as
a grant of subject matter jurisdiction”).
 5 See Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 748
(2012); Grable & Sons Metal Prod., Inc. v. Darue Eng’g & Mfg.,
545 U.S. 308, 317 (2005) (explaining that “a federal cause of
action [is] a sufficient condition for federal-question
jurisdiction”); Am. Well Works Co. v. Layne & Bowler Co., 241
U.S. 257, 260 (1916) (“A suit arises under the law that creates
the cause of action.”).
 6 See also, e.g., Bull HN Info. Sys., Inc. v. Hutson, 229
 - 16 -
 The second possible test for federal question

jurisdiction invokes the theory that federal jurisdiction exists

where non-FAA federal law provides grounds for vacating the

award. See Goldman, 834 F.3d at 255; Carter v. Health Net of

Cal., Inc., 374 F.3d 830, 836–37 & n.4 (9th Cir. 2004);

Greenberg v. Bear, Stearns & Co., 220 F.3d 22, 27 (2d Cir. 2000)

overruled on other grounds by Doscher, 832 F.3d 372. However,

this theory largely depends on the continued vitality of the

“manifest disregard” doctrine (allowing an award to be set aside

if it was made in manifest disregard of federal law), which “has

been thrown into doubt by [Hall Street], where the Supreme Court

‘h[e]ld that [9 U.S.C. § 10] . . . provide[s] the FAA’s

exclusive grounds for expedited vacatur.’” Bangor Gas Co. v.

H.Q. Energy Servs. (U.S.) Inc., 695 F.3d 181, 187 (1st Cir.

2012) (alteration in original) (quoting Hall St., 552 U.S. at

584). This circuit has “not squarely determined whether our

manifest disregard case law can be reconciled with Hall Street.”

Raymond James Fin. Servs., Inc. v. Fenyk, 780 F.3d 59, 64–65

(1st Cir. 2015) (citation and quotation marks omitted).7

F.3d 321, 328 (1st Cir. 2000); PCS 2000 LP v. Romulus
Telecomms., Inc., 148 F.3d 32, 34–35 (1st Cir. 1998); Garrett, 7
F.3d at 884; Harry Hoffman Printing, 912 F.2d at 611.
 7
 The Supreme Court has explicitly reserved the question,
stating “[w]e do not decide whether ‘manifest disregard’
survives our decision in [Hall Street], as an independent ground
for review or as a judicial gloss on the enumerated grounds for
vacatur set forth at 9 U.S.C. § 10.” Stolt-Nielsen S.A. v.
 - 17 -
 We need not and do not decide now whether manifest

disregard remains as an available basis for vacatur. However,

if it does survive, we agree with the courts that have held that

Hall Street compels the conclusion that it does so only as a

judicial gloss on § 10. See Johnson v. Wells Fargo Home Mortg.,

Inc., 635 F.3d 401, 414 (9th Cir. 2011); T.Co Metals, LLC v.

Dempsey Pipe & Supply, Inc., 592 F.3d 329, 340 (2d Cir. 2010).

If this is so, however, a claim of manifest disregard cannot

provide federal question jurisdiction since, as discussed above,

the law is settled that the FAA, including § 10, does not create

a basis for federal question jurisdiction. See Hall St., 552

U.S. at 581–82; Moses H. Cone, 460 U.S. at 25 n.32.

 This leaves only a third, alternative approach: that

the look-through test adopted in Vaden for § 4 petitions applies

to sections 9, 10, and 11 of the FAA. It is the only approach

available that provides broad federal court jurisdiction over

proceedings to enforce awards, a clear objective of the FAA.

Congress cannot have intended jurisdiction over §§ 9–11

petitions only to exist in diversity or perhaps in admiralty.

 The look-through approach also provides a unitary

jurisdictional approach to the FAA, an objective endorsed by

various cases. See Harry Hoffman Printing, 912 F.2d at 611 n.1;

Garrett, 7 F.3d at 884. Applying the look-through approach to

AnimalFeeds Int’l Corp., 559 U.S. 662, 672 n.3 (2010).

 - 18 -
post-award decisions avoids a “bizarre” distinction that would

otherwise follow: “a petition to compel arbitration could be

brought in federal court, but a petition under FAA §§ 9 or 10 to

confirm or vacate the arbitration award in the same dispute

could not.” Westmoreland Capital Corp. v. Findlay, 100 F.3d

263, 268 (2d Cir. 1996) abrogated by Vaden, 556 U.S. 49; see

also Doscher, 832 F.3d at 383 (“[H]ow can a federal court’s

jurisdiction under the same jurisdictional statute differ

between § 4 and all other remedies under the Act?”); id. at 387

(noting that excluding federal question jurisdiction here would

result in a "totally artificial distinction" between cases

stayed under § 3 and freestanding § 10 petitions filed in the

same court) (quoting Vaden, 556 U.S. at 65).

 Applying the look-through approach to §§ 9–11

additionally avoids “curious practical consequences” similar to

those that the Supreme Court recognized in Vaden as supporting

§ 4 jurisdiction. 556 U.S. at 65. Allowing a federal court to

compel arbitration in a federal question case but then later

denying a federal forum for confirming, modifying, or vacating

the award would lead to strange consequences. Remitting the

litigants to state court for post-award enforcement proceedings

would create potential inconsistency between the federal pre-

award decision and the later state court decision involving the

question of whether the arbitrators exceeded their powers by

 - 19 -
deciding issues that are not properly subject to arbitration.

See Coady v. Ashcraft & Gerel, 223 F.3d 1, 9 (1st Cir. 2000).

Doctrines of issue preclusion may not protect against this

eventuality in part because some state courts do not regard the

FAA as preempting state law.8

 Finally, apart from arbitration agreement

interpretation, a reviewing court in post-arbitration

proceedings may be called to answer questions that implicate

federal law. For example, a reviewing court may be asked to

determine whether the arbitrators “refus[ed] to hear evidence

pertinent and material to the controversy,” possibly requiring

the court to consider questions of federal law in deciding

whether the disregarded or excluded evidence was “material to

the controversy.” 9 U.S.C. § 10(a)(3). Regardless of the

avenue by which federal law becomes relevant in reviewing an

arbitration award, it would seem particularly strange to deny a

federal forum where the underlying claim, as here, is based on

the Securities Exchange Act of 1934, claims over which the

federal district courts have exclusive jurisdiction. See

Manning, 136 S. Ct. at 1566. This potential for conflict

 8See Jill I. Gross, Over-Preemption of State Vacatur Law:
State Courts and the FAA, 3 J. Am. Arb. 1, 20 (2004) (collecting
cases).

 - 20 -
further counsels that the look-through approach should apply

consistently under the FAA.

 For all of these reasons, we conclude that the look-

through approach applies to sections 9, 10, and 11 of the FAA.

Applying the look-through approach here, upon review of

claimants’ statement of claim, there is no question that

claimants’ claims involving federal securities laws arise under

federal law.9 Indeed, at oral argument, claimants conceded that

if we were to adopt the look-through approach, claimants lose on

this issue. Accordingly, the district court properly exercised

jurisdiction over claimants’ petition to vacate.

 III.

 We review the district court’s decision to confirm or

vacate an arbitration award de novo. Cytyc Corp. v. DEKA Prods.

Ltd. P’ship, 439 F.3d 27, 32 (1st Cir. 2006). As a threshold

matter, the parties dispute whether the court should apply the

FAA or the state PRAA grounds for vacatur in reviewing the

award. The district court did not resolve this question,

 9Although the statement of claim also includes claims
arising under state law, there is no suggestion that those
claims do not constitute part of the same controversy as the
federal securities law claims. See Vaden, 556 U.S. at 69 n.18
(“[I]f a federal court would have jurisdiction over the parties’
whole controversy, we see nothing anomalous about the court’s
ordering arbitration of a state-law claim constituting part of
that controversy. Federal courts routinely exercise supplemental
jurisdiction over state-law claims. See 28 U.S.C. § 1367.”).

 - 21 -
holding that the statutory grounds are essentially the same.

Because we have already held that the FAA governs in this case,

we need not decide whether the PRAA confers different grounds

for vacatur.

 Turning to the merits, we see no error in the district

court’s decision here refusing to vacate (and confirming) the

award under the FAA. The court’s review of an arbitration award

“is extremely narrow and exceedingly deferential.” Raymond

James, 780 F.3d at 63 (citation and quotation marks omitted);

see also Cytyc Corp., 439 F.3d at 32; Teamsters Local Union No.

42 v. Supervalu, Inc., 212 F.3d 59, 61 (1st Cir. 2000)

(“Arbitral awards are nearly impervious to judicial

oversight.”). In reviewing an arbitration award under the FAA,

“courts ‘do not sit to hear claims of factual or legal error by

an arbitrator as an appellate court does in reviewing decisions

of lower courts.’” Advest, Inc. v. McCarthy, 914 F.2d 6, 8 (1st

Cir. 1990) (quoting United Paperworkers Int’l Union v. Misco,

Inc., 484 U.S. 29, 38 (1987)). This limited review applies

“[e]ven where such error is painfully clear, [because] courts

are not authorized to reconsider the merits of arbitration

awards.” Id. (internal quotation marks omitted); see also

Stolt-Nielsen, 559 U.S. at 671 (“It is not enough for

petitioners to show that the panel committed an error—or even a

serious error.”); McCarthy v. Citigroup Glob. Mkts. Inc., 463

 - 22 -
F.3d 87, 93–94 (1st Cir. 2006). The burden is on the claimants

to establish that the award should be set aside. See JCI

Commc’ns, Inc. v. Int’l Bhd. of Elec. Workers, Local 103, 324

F.3d 42, 51 (1st Cir. 2003). The grounds are set forth in

Section 10 and include only the following:

 (1) where the award was procured by
 corruption, fraud, or undue means;
 (2) where there was evident partiality or
 corruption in the arbitrators, or either of them;
 (3) where the arbitrators were guilty of
 misconduct in refusing to postpone the hearing, upon
 sufficient cause shown, or in refusing to hear
 evidence pertinent and material to the controversy; or
 of any other misbehavior by which the rights of any
 party have been prejudiced; or
 (4) where the arbitrators exceeded their
 powers, or so imperfectly executed them that a mutual,
 final, and definite award upon the subject matter
 submitted was not made.

9 U.S.C. § 10(a).

 Claimants did not expressly invoke FAA § 10. Instead,

claimants’ petition to vacate and subsequent briefing cite

vacatur provisions of the PRAA, 32 L.P.R.A. § 3222(b) and (c),

which are analogous to FAA § 10(a)(2) and (a)(3), respectively.

Accordingly, we address claimants’ claims under the PRAA as

though they had been brought under the analogous provisions of

the FAA.

 Claimants have put forth essentially three theories as

to why vacatur or modification of the arbitration award is

warranted. Claimants argue that these errors collectively show

 - 23 -
evident partiality of the arbitrators (§ 10(a)(2)) and that the

arbitrators engaged in misconduct or misbehavior that prejudiced

claimants’ rights (§ 10(a)(3)).

 Claimants’ first and primary theory is that the

arbitrators were obligated to impose liability on defendants—but

did not—after they were presented with “overwhelming” evidence

supporting their case and after defendants’ counsel made an

alleged admission of “shared responsibility” during closing

arguments at the hearing. Appellants’ Br. 11, 14.10

 The available grounds of vacatur do not allow a

federal court to revisit the arbitrators’ ultimate determination

of whether or not to impose liability. See Advest, 914 F.2d at

8. That the arbitrators apparently were unconvinced by

claimants’ evidence and denied their claims, without more, does

not establish that the arbitrators were biased or guilty of

misbehavior. To the extent that claimants suggest that defense

counsel made an “admission” at closing argument, we do not read

counsel’s comments as a clear admission of liability. Read in

context, counsel’s statements are more reasonably interpreted as

an argument that claimants should be held accountable for their

 10 Claimants quote cases discussing the manifest disregard
doctrine, but they provide no supporting explanation as to how
the doctrine applies to this case. We also note that the
petition to vacate contains several pages discussing the
applicability of a “ratification defense” to this case.
However, claimants have not raised this issue on appeal.

 - 24 -
role, if any, in their own losses. Counsel does not appear to

have suggested that defendants admitted to any particular

proportion of responsibility.

 Second, claimants argue that one arbitrator was

partial to defendants as evidenced by comments he made during

one of the hearings. During claimants’ questioning of a witness

apparently related to claimants’ allegations of defendants’

prior bad acts, the arbitrator said “if I were [defendants’

counsel], I would have a sore throat from objection for

irrelevancies.” Appellants’ Appx. at 75. Read in context,

however, the arbitrator’s statements indicate that he was

concerned with the number and length of the hearings, as well as

the potential for scheduling issues if the hearings needed to be

prolonged. He suggested to claimants that he believed the

particular line of questioning was irrelevant and that claimants

should move on to other questions. This hardly supports the

existence of bias, and without more, claimants have not

established “specific facts that indicate improper motives on

the part of an arbitrator.” JCI Commc’ns, 324 F.3d at 51

(quoting Al Harbi v. Citibank, N.A., 85 F.3d 680, 683 (D.C. Cir.

1996)). A reasonable person would not “have to conclude” from

this exchange that the arbitrator was evidently partial to

defendants. Id.

 - 25 -
 Third and finally, claimants argue that the

arbitrators failed to admit relevant evidence relating to claims

previously brought against defendant Rodríguez-Abella by

unrelated parties. Claimants’ third theory also fails. “Of

course, § 10(a)(3) does not require arbitrators to consider

every piece of relevant evidence presented to them.” Doral Fin.

Corp. v. Garcia-Velez, 725 F.3d 27, 31 (1st Cir. 2013). “An

arbitration award must not be set aside for the arbitrator's

refusal to hear evidence that is cumulative or irrelevant.”

Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De

Tronquistas Local 901, 763 F.2d 34, 40 (1st Cir. 1985)

(citations omitted). “Vacatur is appropriate only when the

exclusion of relevant evidence so affects the rights of a party

that it may be said that he was deprived of a fair hearing.”

Id. (internal quotation marks omitted).

 Here, claimants have not established that they were

deprived of a fair hearing. The record shows that claimants

were permitted to ask some questions about Rodríguez-Abella’s

former clients’ actions against him. The arbitrators sustained

objections based on relevancy only because those prior actions

had been settled. We need not decide whether under the Federal

Rules of Evidence, such evidence would be admissible. See

United States v. Bailey, 696 F.3d 794, 800 (9th Cir. 2012).

Whether or not such evidence would be admissible in federal

 - 26 -
court, we will not disturb the arbitrators’ decisions sustaining

defendants’ evidentiary objections. See Hoteles Condado Beach,

763 F.2d at 39–40 (“Absent exceptional circumstances, . . . a

reviewing court may not overturn an arbitration award based on

the arbitrator’s determination of the relevancy or

persuasiveness of the evidence submitted by the parties.”).

 Apart from claimants’ three theories of vacatur,

claimants suggest in their petition to vacate that the same

alleged errors resulted in an error in number calculation

warranting modification of the award. See 9 U.S.C. § 11(a).

However, § 11 plainly does not provide for modification where

claimants’ sole position is that the arbitrators erred in

denying their claims. See Advest, 914 F.2d at 8 n.4 (noting

that “§ 11 provides for correction of ‘evident’ and ‘material’

arithmetic or descriptive errors”).

 Because we affirm the district court’s determination

that vacatur or modification of the arbitration award is not

warranted, we also affirm the court’s confirmation of the award.

See 9 U.S.C. § 9 (“[T]he court must grant [an order confirming

the award] unless the award is vacated, modified, or corrected

as prescribed in sections 10 and 11 of this title.”).

 IV.

 We conclude that the district court properly exercised

jurisdiction over claimants’ petition to vacate or modify the

 - 27 -
arbitration award. We also hold that the district court was

correct in denying claimants’ petition and confirming the award.

Accordingly, we affirm.

 AFFIRMED. Costs to appellees.

 - 28 -